UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Hotel 57 L.L.C. and 1260 BB Property, LLC

        Plaintiffs,

-against-

FSR International Hotels Inc. and Four Seasons Hotels Limited,

        Defendants.

Case No. _____

# PETITION FOR APPOINTMENT OF ARBITRATORS

Hotel 57 L.L.C. and 1260 BB Property, LLC (collectively, "Owner") petition this Court pursuant to 9 U.S.C. §§ 5 & 206 for an order resolving the breakdown of the arbitrator selection process in an arbitration pending before the American Arbitration Association ("AAA") between Owner and Respondents, FSR International Hotels Inc. and Four Seasons Hotels Limited (collectively, "Four Seasons"). Owner respectfully requests that this Court order the parties to each select one party-appointed arbitrator, with the third to be chosen either by the two party-appointed arbitrators or, failing that, the AAA; or, in the alternative, that this Court appoint a panel of three arbitrators from among the candidates proposed by the parties, selecting at least one arbitrator with experience in the hospitality industry.

In support of this Petition, Owner submits the Affirmation of Gregory J. Scandaglia and its annexed exhibits,[1] along with the Memorandum of Law filed herewith, and further states as follows:

---

[1] Exhibits to the Scandaglia Decl. are cited herein as "Ex. __."

## NATURE OF THE ACTION

1.  This action arises out of the parties' inability to constitute an arbitral panel to hear a dispute regarding Four Seasons' contractual and fiduciary breaches in its management of two storied hotel properties owned by Owner in New York City (Four Seasons Hotel New York) and Santa Barbara, California (Four Seasons Resort The Biltmore Santa Barbara).

2.  The underlying arbitration agreement between Owner and Four Seasons provides that their dispute shall be resolved by a panel of three arbitrators. For more than <u>five</u> months, the parties have attempted to constitute the panel. During that time, they have collectively exchanged <u>eight</u> lists of potential arbitrators and considered <u>sixty-five</u> different candidates. But the parties have not reached agreement on even one arbitrator – let alone the three necessary to form the panel – and there is no prospect that they will reach agreement in the future as the parties have fundamentally different perspectives on the appropriate composition of the panel. Because neither the selection protocol nor the applicable arbitration rules provide any mechanism for appointing an arbitrator absent mutual consent, the parties are stuck at an impasse that will indefinitely delay the arbitration proceedings absent court intervention.

3.  Accordingly, pursuant to 9 U.S.C. §§ 5 and 206, Owner commences this proceeding seeking an Order to break the parties' impasse. To resolve the existing deadlock, the Court should order that arbitrators be selected in accordance with the selection process set forth in the two hotel management agreements that govern the parties' relationship. Under that process, Owner and Four Seasons are to each select one party-appointed arbitrator and the third is to be chosen either by the two party-appointed arbitrators or, failing that, the AAA.

4.  In the alternative, should this Court be disinclined to revert to the process under the hotel management agreements, it still should exercise its authority to directly appoint all three

arbitrators. In that event, Owner respectfully submits that the Court should consider candidates proposed by the parties and constitute a panel from among those options. In doing so, the Court should select at least one arbitrator with experience in the hospitality industry, which will provide the panel with appropriate balance and experience to assess and resolve the parties' claims and defenses.

5. At present, the parties are trapped in a selection process that has proven fundamentally unworkable and lacks any mechanism for breaking the existing deadlock. As such, the parties cannot proceed with their arbitration and Owner cannot have its claims against Four Seasons heard and resolved on the merits. That is an untenable situation. The Court can and should resolve the impasse by exercising its statutory authority under the FAA and the New York Convention.

## THE PARTIES

6. Hotel 57 L.L.C. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Illinois. Hotel 57 L.L.C. owns Four Season Hotel New York, which is located at 57 East 57th Street in New York, New York.

7. 1260 BB Property, LLC is a corporation organized under the laws of the State of Delaware, with its principal place of business in Illinois. 1260 BB Property, LLC owns the Four Seasons Resort The Biltmore Santa Barbara, which is located at 1260 Channel Dr., Santa Barbara, California.

8. FSR International Hotels Inc. ("FIH") is a corporation organized under the laws of Nevada, with its principal place of business in Toronto, Canada.

9. Four Seasons Hotels Limited ("FSHL") is a foreign corporation organized under the laws of Canada, with its principal place of business in Toronto, Canada.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 9 U.S.C. § 200 *et seq.*, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). The New York Convention applies to this proceeding because it involves an arbitration agreement that arises out of a commercial relationship and at least one party is a citizen of a foreign state. Section 203 of the New York Convention provides that "district courts of the United States . . . shall have original jurisdiction" over proceedings to which the New York Convention applies. 9 U.S.C. § 203.

11. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that the controversy is between the citizens of different States and citizens of a foreign state and the amount at issue in this dispute exceeds $75,000.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because the parties, through a written agreement, consented to venue in this Court.

13. Venue is also proper in this district pursuant to the New York Convention because the arbitration agreement at issue here provides that the situs of the arbitration shall be New York, New York. 9 U.S.C. § 204.

## FACTUAL BACKGROUND

### A. Owner Terminates the Parties' Agreements Due to Four Seasons' Breaches.

14. More than two decades ago, Owner acquired Four Seasons Hotel New York ("FSNY") and Four Seasons Resort The Biltmore Santa Barbara ("FSSB"). Since then, Owner has invested hundreds of millions of dollars in the hotels to fund extensive renovations, to perform ongoing maintenance, and to support day-to-day operations. Owner's return on that investment

ultimately depends on the management and performance of the properties, and any losses generated by unprofitable operations are born solely by Owner.

15. To manage each hotel, Owner turned to Four Seasons. The parties entered into two separate HMAs, one governing the management of FSNY – the Second Amended and Restated Hotel Management Agreement, dated as of August 1, 1996 (as amended, the "FSNY HMA," Ex. 1) – and the other governing the management of FSSB – the Hotel Management Agreement, dated as of November 8, 1995 (as amended, the "FSSB HMA," Ex. 2) (collectively, the FSNY HMA and the FSSB HMA may be referred to as the "HMAs"). The HMAs governed the management of the hotels and set forth obligations that Four Seasons owed to Owner, including duties to maximize profits and minimize costs while operating the properties consistent with the standard of world class luxury hotels.

16. The dispute underlying this action relates to Four Seasons' mismanagement of FSNY and FSSB in violation of its contractual and fiduciary duties to the direct and substantial financial detriment of Owner. As a result of Four Seasons' breaches, Owner served detailed default notices on Four Seasons in February 2021, and then, after Four Seasons failed to cure those defaults, served notices in March 2021 terminating Four Seasons' management of both hotels under the HMAs. However, Four Seasons refused to vacate the properties and contested Owner's termination of the HMAs, and an arbitration before the AAA was initiated on March 29, 2022.

**B. The Parties' Arbitration Agreement.**

17. Each HMA contains an arbitration provision. (Exs. 1, 2.) After the parties' dispute arose, the parties recognized that the HMAs would require the parties to conduct two separate arbitrations before separate panels to resolve their disputes at each property. On July 28, 2021, the parties entered into a letter agreement (the "Letter Agreement"), to provide for a single,

consolidated arbitration in New York, New York before a panel of three neutral, impartial and independent arbitrators. Pursuant to Letter Agreement, unless otherwise modified, the arbitration provisions of the HMAs remained in full force and effect.

    **C.**    **The Arbitrator Selection Process.**

    18.    The HMAs provide that arbitrable disputes are to be resolved by a panel of three arbitrators, and incorporate a well-established and common process for the selection of arbitrators in complex commercial disputes. Each party is to appoint one arbitrator. Then, within ten days of their appointment, the two party-appointed arbitrators (or, failing that, the AAA) nominate a third independent arbitrator (who, in certain types of disputes, must have at least ten years of experience in the luxury hotel business).

    19.    After arbitration was initiated before the AAA, Owner and Four Seasons entered into a Stipulated Arbitration Protocol dated May 17, 2022 (the "Protocol"). In addition to addressing the scope of discovery in the arbitration, the Protocol established a new, consensus-based process for selecting arbitrators. The parties expected that this process would result in the prompt constitution of a complete panel.

    20.    Under the Protocol, each party was to simultaneously submit the names of eight potential arbitrators to the AAA. In the event that a candidate appeared on both lists, the AAA would obtain certain disclosures from the candidate. The AAA then was to provide those disclosures to the parties along with the names of all other candidates identified on the lists (*i.e.*, those who were identified by only one party as potential arbitrators). After that, each party had an opportunity to select an unmatched candidate from the other's list that it found acceptable. The parties then would jointly telephonically contact the selected candidates. If one of those candidates confirmed their availability and willingness to serve, then that candidate became a member of the

panel (subject to the subsequent use of preemptory strikes by either party). This process was to be repeated every seven business days until a panel was formed.

**D. The Arbitrator Selection Process Has Reached an Impasse.**

21. In the five months since the parties entered into the Protocol, they have failed to agree on a single arbitrator. Despite exchanging <u>eight lists</u> of potential arbitrators – on June 7, 2022, June 28, 2022, July 20, 2022, October 11, 2022 – and identifying a total of <u>sixty-five</u> potential arbitrators, there has been not a single overlap between the respective lists.

22. The parties have jointly interviewed five potential arbitrators – Hon. Kathleen Roberts (on June 20, 2022), Hon. Eileen Brewer (on June 21, 2022), Hon. Ariel Belen (on July 14, 2022), Hon. Richard Holwell (on August 24, 2022), and Daniel Larken (on September 14, 2022) – and attempted to interview two more candidates who were unavailable (Hon. Barbara Jones) or conflicted from the dispute (Hon. Ruben Castillo).

23. On October 6, 2022, after months of deadlock and with no agreed arbitrators, Owner sent Four Seasons a letter chronicling the parties' unsuccessful efforts to select an arbitral panel, and acknowledged that the parties had reached an impasse. Owner expressed its willingness, at Four Seasons' request, to exchange one more round of lists, but cautioned that the impasse was prejudicing Owner and could not be allowed to persist indefinitely.

24. Despite months of efforts, the parties have not agreed on the appointment of even one arbitrator.

25. During the list-and-interview process, Owner's focus remained on promptly and fairly constituting a panel. To that end, Owner expressed a willingness to consider alternative selection procedures. Owner proposed using a rank-and-strike method and also proposed reverting to the party arbitrator-based selection process under the HMAs. While, at one point, Four Seasons'

7

counsel promised to create a written rank-and-strike protocol for consideration, none was ever provided and Four Seasons never agreed to pursue any alternative method that could have broken the parties' deadlock.

26. The parties' impasse is in part inherent to the structure of the Protocol – which requires mutual consent for the appointment of all candidates – but is also partly philosophical. Throughout the arbitrator selection process, Owner has expressed its belief that at least one panel member should be an individual possessing experience in the hospitality industry. But Four Seasons has rejected every industry candidate proposed by Owner, has not proposed a single industry candidate of its own, and has stated that it does not believe a viable industry candidate can be selected.

**E.     Court Intervention Is Warranted To Appoint An Arbitration Panel.**

27. In light of the disagreement between the parties and the structure of the Protocol selection process, it is inevitable that the parties' impasse will persist indefinitely. More than five months have elapsed since the parties entered into the Protocol. During that period, they collectively have proposed and considered <u>sixty-five</u> candidates. Yet the parties have not agreed to <u>even one</u> of the three arbitrators necessary to form a panel. There is no mechanism to resolve this impasse under the Protocol. Court intervention thus is necessary to break the deadlock.

28. The HMAs themselves provide a practical and appropriate selection method to resolve the parties' impasse. Each of the HMAs provides, in relevant part, that in the event of an arbitration, each party shall appoint one arbitrator and the third shall be chosen by agreement of the two-party appointees or, failing that, the AAA. The Court should order that the appointments be made in that manner as it reflects the previous express written agreement of the parties.

29. If the Court is disinclined to use the process agreed to by the parties in the HMAs, it alternatively should resolve the impasse by directly appointing all three arbitrators from the candidates proposed by the parties during the list-and-interview process. Owner respectfully requests that any such panel have at least one arbitrator who has direct experience in the hospitality industry. The underlying arbitration between the parties involves a significant and highly complex dispute related to the management of two world-class luxury hotels that implicates lengthy and complex hotel management agreements, a wide range of operations from labor and revenue management to maintenance to capital expenditures, and various industry customs, practices and standards. An individual with hotel industry expertise would enhance a panel by assisting the arbitrators in processing, contextualizing, and understanding the industry-specific issues and evidence that will be part of the arbitration. Therefore, any panel constituted by direct appointment of the Court should include at least one industry arbitrator.

**CLAIM FOR RELIEF**

30. Section 206 of the New York Convention provides that a court having jurisdiction may "appoint arbitrators in accordance with the provisions of the agreement" entered into by the parties.

31. Further, under Section 5 of Title 9 of the United States Code, "if for any . . . reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require." Section 5's lapse standard requires nothing more than "<u>a lapse in time</u> in the naming of the arbitrator . . . or <u>some other mechanical breakdown</u> in the arbitrator selection process." *Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's*

*London Syndicate 53*, 615 F. App'x 22, 22-23 (2d Cir. 2015) (quoting *In re Salomon Inc. S'holders' Derivative Litig.,* 68 F.3d 554, 560 (2d Cir.1995)) (emphasis added).

32. As set forth above, there has been a breakdown in the arbitrator selection process for the underlying arbitration.

33. Because of the Protocol's reliance on consensus and the parties' fundamental disagreement about the appropriate composition of a panel, the parties cannot resolve their impasse absent court intervention.

34. Owner respectfully requests this Court enter an Order mandating that the parties, consistent with the arbitration provisions in the HMAs, each select one party-appointed arbitrator, with the third to be chosen either by the two party-appointed arbitrators or, failing that, the AAA; or, in the alternative, appointing a panel of three arbitrators from among the candidates proposed by the parties, including at least one arbitrator with experience in the hospitality industry.

**WHEREFORE,** Petitioners respectfully request that this Court:

A. Issue an Order directing the parties to each select one party-appointed arbitrator, with the third to be chosen either by the two party-appointed arbitrators or, failing that, the AAA; or, in the alternative, directing the appointment of three arbitrators from among the candidates proposed by the parties, including at least one arbitrator with experience in the hospitality industry; and

B. Grant Petitioners such other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 31, 2022

Respectfully submitted,

   */s/ Todd E. Soloway*
Todd E. Soloway
Bryan T. Mohler
PRYOR CASHMAN LLP
7 Times Square, 40th Floor
New York, NY 10036
Phone: (212) 421-4100
Fax: (212) 326-0806
Email: tsoloway@pryorcashman.com
       bmohler@pryorcashman.com

Gregory J. Scandaglia
(*pro hac vice* application forthcoming)
Joseph R. Swee
(*pro hac vice* application forthcoming)
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
Phone: (312) 580-2020
Fax: (312) 782-3806
Email: gscandaglia@scandagliaryan.com
       jswee@scandagliaryan.com

*Counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC*