UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hotel 57 L.L.C. and 1260 BB Property, LLC<br><br>Plaintiffs,<br><br>-against-<br><br>FSR International Hotels Inc. and Four Seasons Hotels Limited,<br><br>Defendants. | Case No. _____ |

## DECLARATION OF GREGORY J. SCANDAGLIA IN SUPPORT OF PETITION FOR APPOINTMENT OF ARBITRATORS

Pursuant to 28 U.S.C. § 1746, GREGORY J. SCANDAGLIA declares:

1. I am a founder and partner at the law firm Scandaglia Ryan LLP, counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC (collectively, "Owner") in this action. I submit this declaration in support of Owner's Petition for the Appointment of Arbitrators.

**The Parties' Relationship and the Underlying Dispute**

2. More than two decades ago, Owner acquired two luxury hotel properties, Four Seasons Hotel New York ("FSNY") and Four Seasons Resort The Biltmore Santa Barbara ("FSSB"). Since acquiring the FSNY and FSSB, Owner has invested hundreds of millions of dollars in the operation, maintenance, and renovation of the hotels. Owner's return from the hotels depends on the performance of the properties, and Owner must bear losses suffered at the properties.

3. FSR International Hotels Inc. and Four Seasons Hotels Limited (collectively, "Four Seasons") were engaged to manage FSNY and FSSB pursuant to separate hotel management agreements ("HMAs"). Attached as Exhibit 1 hereto is a true and correct copy of relevant excerpts

of the Second Amended and Restated Hotel Management Agreement, dated as of August 1, 1996 (as amended, the "FSNY HMA").  Attached as Exhibit 2 hereto is a true and correct copy of relevant excerpts of the Hotel Management Agreement, dated as of November 8, 1995 (as amended, the "FSSB HMA").

4. The HMAs governed the management of the FSNY and FSSB and set forth obligations that Four Seasons owed to Owner, including duties to maximize profits and minimize costs while operating the properties consistent with the standard of world class luxury hotels. Under the HMAs, Four Seasons was the express fiduciary of Owner and was required to manage the hotels consistent with duties of care and loyalty for the ultimate benefit of Owner.

5. The dispute underlying this action relates to Four Seasons' extensive mismanagement of FSNY and FSSB in violation of its contractual and fiduciary duties to the direct and substantial financial detriment of Owner, as detailed in default notices served on Four Seasons in February 2021.

6. On March 24, 2021, after Four Seasons failed to cure the noticed defaults, Owner served notice on Four Seasons terminating the HMAs. In response to the termination notices, Four Seasons refused to vacate the properties and contested Owner's termination of the HMAs. An arbitration before the AAA, which is currently pending, was initiated on March 29, 2022.

**The Parties' Arbitration Agreement**

7. Each HMA contains an arbitration provision.  (Ex. 1, FSNY HMA, § 20.03; Ex. 2, FSSB HMA, § 19.03.)  Recognizing that, absent modification, the HMAs would require the parties to conduct two arbitration proceedings, in July 2021 the parties entered into a letter agreement (the "Letter Agreement") providing for a "single, consolidated arbitration . . . in New York, New York before a panel of three neutral, impartial and independent arbitrators."

8.  Together, the HMAs and the Letter Agreement provide that the arbitration is to be conducted under the auspices of the AAA and governed by the AAA's Commercial Arbitration Rules.  (Ex. 1, FSNY HMA, § 20.03(c); Ex. 2, FSSB HMA, § 19.03(c).)  The Letter Agreement further provided that "the FSNY HMA and the FSSB HMA remain[ed] in full force and effect" except to the extent modified therein.

**The Arbitrator Selection Process**

9.  The HMAs provide that arbitrable disputes among the parties shall be resolved by a panel of three arbitrators.  (Ex. 1, FSNY HMA, § 20.03(a); Ex. 2, FSSBY HMA, § 19.03(a).)  Each HMA incorporates a well-established and common selection process for complex commercial disputes.  Each party is to appoint one arbitrator.  (Ex. 1, FSNY HMA, §20.03(a); Ex. 2, FSSB HMA, § 19.03(a).)  Then, within ten days of their appointment, the two party-appointed arbitrators are to nominate a third independent arbitrator (who, in certain types of disputes, must have at least ten years of experience in the luxury hotel business).  (Ex. 1, FSNY HMA, §20.03(a); Ex. 2, FSSB HMA, § 19.03(a).)  In the event the party-appointed arbitrators are unable to agree upon the third panel member, then the AAA is to complete the panel by making the final appointment.  (Ex. 1, FSNY HMA, §20.03(a); Ex. 2, FSSB HMA, § 19.03(a).)  This is the same arbitrator selection procedure called for under Rules R-13 and R-14 of the AAA's Commercial Arbitration Rules.[1]

10.  After the underlying arbitration was initiated, Owner and Four Seasons entered into a Stipulated Arbitration Protocol dated May 17, 2022 (the "Protocol"), which set forth certain agreements on the scope of discovery and included a new, consensus-based process for selecting arbitrators.  Attached hereto as Exhibit 3 is a true and correct copy of the Protocol.

---

[1] *See* AAA Commercial Rules and Mediation Procedures, *available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf.

3

11. Under the Protocol, each party was to simultaneously submit the names of eight potential arbitrators to the AAA. In the event that a candidate appeared on both lists (a "joint candidate"), the AAA would obtain certain disclosures from the candidate. The AAA then was to provide those disclosures to the parties along with the names of all other candidates identified on the lists (*i.e.*, those who were identified by only one party as potential arbitrators). After that, each party had an opportunity to identify any unmatched candidate from the other's list that it found acceptable (a "matched candidate"). The parties then would jointly telephonically contact the joint candidates and the matched candidates. If one of those candidates confirmed their availability and willingness to serve, then that candidate became a member of the panel (subject to the subsequent use of preemptory strikes by either party). This process was to be repeated every seven business days until a panel was formed.

**The Breakdown of the Selection Process**

12. On June 7, 2022, each party submitted its first list of eight candidates to the AAA. Attached as Exhibit 4 hereto is a true and correct copy of Owner's first list of candidates submitted on June 7, 2022. Attached as Exhibit 5 hereto is a true and correct copy of Four Seasons' first list of candidates submitted on June 7, 2022.

13. No candidate appeared on both of the parties' June 7th lists. Understanding that the process under the Protocol could devolve into an endless exchange of candidate lists, the parties agreed to defer the exchange of additional lists and to convene joint interviews of two candidates – one identified by each party – to assess their suitability as arbitrators. I participated in interviews with the Honorable Kathleen Roberts, nominated by Four Seasons, on June 20, 2022, and with the Honorable Eileen Brewer, nominated by Owner, on June 21, 2022.

14. These interviews (as with all subsequent interviews) were extended and substantive, taking roughly an hour or more. In these interviews, counsel for the parties asked the potential arbitrators numerous questions regarding their personal and professional background, legal, industry and other experience, and perspective on arbitration proceedings. Ultimately, the parties did not agree to the appointment of either Judge Roberts or Judge Brewer, or any of the other proposed arbitrators identified on their respective June 7th lists.

15. On June 28, 2022, each party submitted its second list of eight candidates to the AAA. Attached as Exhibit 6 hereto is a true and correct copy of Owner's second list of candidates submitted on June 28, 2022. Attached as Exhibit 7 hereto is a true and correct copy of Four Seasons' second list of candidates submitted on June 28, 2022.

16. No name appeared on both parties' June 28th lists and the parties agreed to delay the exchange of the next set of lists while they interviewed potential arbitrators.

17. On July 14, 2022, I participated in a joint interview of the Honorable Ariel Belen, who was a candidate from Owner's second list. Ultimately, the parties did not reach agreement on the appointment of Judge Belen or any of the other proposed arbitrators identified on their respective June 28th lists.

18. On July 20, 2022, each party submitted its third list of eight candidates to the AAA. Attached as Exhibit 8 hereto is a true and correct copy of Owner's third list of candidates submitted on July 20, 2022. Attached as Exhibit 9 hereto is a true and correct copy of Four Seasons' third list of candidates submitted on July 20, 2022.

19. No name appeared on both parties' July 20th lists, and the parties again agreed to delay the next set of lists while they interviewed potential arbitrators. The parties sought to

interview the Honorable Barbara Jones (who had been identified on Four Seasons' initial June 7th list) but she was unable to serve as an arbitrator due to other commitments.

20. On August 24, 2022 and September 14, 2022 respectively, the parties conducted interviews of the Honorable Richard Holwell (who was identified in Four Seasons' June 7th list) and Mr. Daniel Larkin (who Owner proposed as an arbitrator outside of the parties' list exchange process). But the parties did not agree on the appointment of either, or any of the other proposed arbitrators identified on their respective July 20th lists.

21. On October 6, 2022, on behalf of Owner, I wrote a letter to counsel for Four Seasons chronicling the parties' unsuccessful efforts to select an arbitral panel to date and acknowledging that the parties had reached an impasse. I further expressed Owner's willingness, at Four Seasons' request, to exchange one more round of lists, but cautioned that the impasse was prejudicing Owner and could not be allowed to persist indefinitely.

22. On October 11, 2022, each party submitted its fourth list of eight candidates to the AAA. Attached as Exhibit 10 hereto is a true and correct copy of Owner's fourth list of candidates submitted on October 11, 2022. Attached as Exhibit 11 hereto is a true and correct copy of Four Seasons' fourth list of candidates submitted on October 11, 2022.

23. No name appeared on both parties' October 11th lists, and the parties again agreed to consider interviewing potential arbitrators. The parties contacted the Hon. Ruben Castillo (from Owner's fourth list) for a potential interview, but he responded that he had a disqualifying conflict. No further interviews were conducted. The parties did not agree on the appointment of any proposed arbitrators identified on their respective October 11th lists.

**Owner's Efforts to Break the Impasse and Constitute a Panel**

24. Throughout the arbitrator selection process, Owner has consistently maintained that – given the complex, fact-intensive, and industry-specific nature of the parties' dispute – an appropriate panel should have at least one arbitrator with direct experience in the hospitality industry. Industry candidates are routinely appointed in complex commercial arbitrations, and the HMAs recognize that industry arbitrators play a unique role, requiring that, for certain types of disputes, the third arbitrator have at least ten years of experience in the hotel business. Four Seasons has rejected every industry candidate proposed by Owner, has refused to propose any of its own industry candidates, and has stated that it does not believe a viable industry candidate can be selected. The parties' fundamental disagreement about the composition of an appropriate panel has created an impasse in the arbitration selection process provided for in the Protocol, which requires mutual consent of the parties to constitute a panel.

25. During the list-and-interview process, Owner's focus remained on promptly and fairly constituting a panel. To that end, Owner expressed a willingness to consider alternative selection procedures.

26. For example, I proposed using a rank-and-strike method, which is common in complex commercial disputes and is the default selection method under the AAA's Commercial Arbitration Rules. (*See* AAA Rule R-12.) Four Seasons' counsel, at one point, agreed to create a written rank-and-strike protocol for consideration. But, none was ever provided.

27. I also proposed reverting to the party arbitrator-based selection process set forth in the FSNY HMA and the FSSB HMA.

28. To date, Four Seasons has not agreed to pursue any alternative method that could lead to the constitution of a panel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:     October 31, 2022
           Chicago, Illinois

_____
GREGORY J. SCANDAGLIA, ESQ.