UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Hotel 57 L.L.C. and 1260 BB Property, LLC,

                Petitioners,

       -against-

FSR International Hotels Inc. and Four Seasons
Hotels Limited,

               Respondents.

Case No. 1:22-cv-09331 (LLS)

---

## **MEMORANDUM OF LAW IN OPPOSITION<br>TO PETITION FOR APPOINTMENT OF ARBITRATORS**

MORRISON & FOERSTER LLP

Anthony S. Fiotto
Nathan D. Reilly
Julia Koch
200 Clarendon Street
Boston, MA 02118
(617) 648-4774
afiotto@mofo.com
nreilly@mofo.com
jkoch@mofo.com

*Counsel for Respondents*
*FSR International Hotels Inc. and*
*Four Seasons Hotels Limited*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  PRELIMINARY STATEMENT ............................................................... 1

II. STATEMENT OF FACTS ................................................................... 4

    A.  Background ........................................................................... 4

    B.  The Dispute Underlying the Petition ................................................ 4

    C.  The Original Arbitration Agreements in the HMAs ................................ 6

    D.  The July 2021 Agreement and the May 2022 Protocol ......................... 8

    E.  The Arbitrator Selection Process .................................................. 9

III. ARGUMENT ................................................................................ 12

    A.  There is No Breakdown Under Section 5 ....................................... 12

    B.  The Relief Requested in the Petition is Inappropriate ....................... 15

    C.  To Expedite the Panel Selection Process,
        Four Seasons Proposes Solutions That Effectuate the Parties' Intent ........ 21

IV. CONCLUSION ............................................................................. 23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*4 BAB LLC v. Beacon Health Options, Inc.*,
2020 WL 409788 (N.D.N.Y. Jan. 24, 2020) .......................................................................14

*Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob Servs., Inc.*,
729 F.3d 443 (5th Cir. 2013) ...............................................................................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .....................................................................................................15, 20

*ATSA of California, Inc. v. Continental Ins. Co.*,
702 F.2d 172 (9th Cir. 1983), *amended*, 754 F.2d 1394 (9th Cir. 1985) ...........................17

*Baylor Health Care Sys. v. Beech St. Corp.*,
2013 WL 2095777 (N. D. Tex., May 15, 2013) ............................................................19, 21

*BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*,
689 F.3d 481 (5th Cir. 2012) ...............................................................................................15

*Certain Underwriters at Lloyd's London v. Vintage Grand Condominium
Association, Inc.*,
2019 WL 760802 (S.D.N.Y February 6, 2019) ....................................................................13

*Co., L.P. v. Albany County, New York*,
2018 WL 2390121 (N.D.N.Y. May 25, 2018) ......................................................................18

*Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*,
922 F. Supp. 1534 (S.D. Fla. 1996) .....................................................................................19

*In re Dynegy Inc.*,
486 B.R. 585 (Bankr. S.D.N.Y. 2013) ..................................................................................14

*Employers Insurance Company of Wausau v. Arrowood Indemnity Company*,
2013 WL 8655140 (S.D.N.Y Oct. 25, 2013) ..................................................................17, 18

*Evangelical Lutheran Good Samaritan Society v. Moreno*,
2019 WL 999736 (D. New Mexico February 28, 2019) ...................................................19, 21

*GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*,
No. 1:11-CV-00907 AWI JLT, 2011 WL 6780927 (E.D. Cal. Dec. 27, 2011) .....................19

*Karrena USA Inc. v. Cobra Thermosolar Plats, Inc.*,
2022 WL 73518 (D. Nev. Jan. 7, 2022) ................................................................................13

*Moss v. First Premier Bank*,
    835 F.3d 260 (2d Cir. 2016)............................................................................16

*National Union Fire Ins. Co. of Pittsburgh v. Source One Staffing LLC*,
    2016 WL 5940920 (S.D.N.Y. October 13, 2016) ....................................................19

*Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Synd. 53*,
    615 Fed. Appx. 22 (2d Cir. 2015) ............................................................................18

*Pacific Reinsurance Mgt. v. Ohio Reinsurance Corp.*,
    814 F.2d 1324 (9th Cir. 1987) ................................................................13, 16, 17, 18

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)....................................................................................................16

*In re Salomon Inc. Shareholders' Derivative Lit.*,
    68 F.3d 554 (2d Cir. 1995)....................................................................12, 13, 17

*The Stop & Shop Supermarket Company LLC v. United Food and Commercial*
    *Workers Union Local 342, AFL-CIO, CLC*,
    246 Fed. Appx. 7 (2d Cir. 2007) ..............................................................................18

*Volt Info. Sciences v. Bd. Of Ty's.*,
    489 U.S. 468 (1989)............................................................................................15, 20

**Statutes**

Fed. R. Civ. P. 26(a)(2)(B) .......................................................................................9

The Federal Arbitration Act, 9 U.S.C. § 5 ........................................................ *passim*

# I.    PRELIMINARY STATEMENT

Ty Warner ("Warner"), through his wholly owned companies, Hotel 57 L.L.C. ("**Hotel 57**") and 1260 BB Property, LLC ("**1260 Property**" and collectively with Hotel 57, the "**Petitioners**"), is attempting to avoid his commitment with respect to an arbitration selection process.  Warner claims that Four Seasons Hotels Limited ("**FSHL**") and its affiliate, FSR International Hotels Inc. ("**FSR**" and collectively with FSHL, "**Four Seasons**"), were terminated as managers of the Four Seasons Hotel New York ("**FSNY**") and the Four Seasons Resort The Biltmore Santa Barbara ("**FSSB**" and collectively with FSNY, the "**Hotels**") in March 2021 but have refused to vacate the Hotels.  Warner's claims are false.  Four Seasons properly disputed Warner's claims, and Warner has no contractual right to terminate the management agreements in light of that ongoing dispute.  Warner's Petition is not focused on promptly and fairly constituting an arbitration panel.  Rather it is a request to dismiss two binding arbitration agreements among the parties and instead impose a selection process the parties, including Petitioners, chose not to use.  The request should be denied.

It is undisputed that the parties entered into two agreements in June 2021 (the "**June 2021 Agreement**") and May 2022 (the "**May 2022 Protocol**" and collectively with the June 2021 Agreement, the "**Existing Arbitration Agreements**," or "**EAAs**") that set forth the arbitrator selection process that is to govern their dispute.  The EAAs replaced the process prescribed in the parties' hotel management agreements, originally executed in the 1990s between Four Seasons and the prior owners of the Hotels, in which each side selects an arbitrator and the two arbitrators select a third.  The EAAs, negotiated and entered into precisely to establish a selection methodology to resolve the substantive dispute between the

parties, provide for a process in which the parties mutually select a three-member panel of neutral, independent, and impartial arbitrators.[1]

Warner, however, has delayed that process by refusing to proceed unless the parties agree to appoint to the panel an "industry candidate"—that is, a consultant in the hotel industry. But the EAAs do not require that the panel include an industry candidate. In fact, when the parties replaced the arbitration process in the original management agreements with the EAAs, they intentionally did not incorporate a provision, present in the original management agreements, that mandates a panel include such a candidate. This was because that provision mandates such a candidate *only in three circumscribed subjects of dispute*. Here the parties have agreed, as part of the EAAs, that those three subjects of dispute are *not* implicated in their current disputes. This is not a case about a failed selection process. It is, rather, a case about a party's attempt to unilaterally restructure that process.

Nor is there anything to Petitioners' claim that the current disputes under the EAAs require industry knowledge. This is confirmed, as noted above, by the fact that the parties acknowledged that the parties' current subjects of dispute do not require industry expertise and agreed to an arbitration agreement that did not incorporate the legacy provision providing for one. It is also confirmed by the fact that the parties agreed to dispense with another provision in the parties' original dispute resolution clause. That legacy clause mandated that the parties engage in a pre-arbitration, non-binding process involving industry experts. In the EAAs, the

---

[1] As described in detail below, the EAAs' process provides that the parties simultaneously submit to the American Arbitration Association (the "**AAA**") lists of candidates and any matches become members of the panel. If there are no matches, a party may agree to an arbitrator on the other party's list or, if there is no agreement, the parties submit additional lists.

parties replaced that clause with a pre-arbitration, non-binding process before a mediator who *does not* list any hospitality industry expertise (or even experience) in his online profile.

In any event, the parties' dispute involves interpreting contractual provisions in management contracts, evaluating witness credibility, and calculating damages under California and New York law—topics that are far more suitable to a retired judge than an industry consultant.  Finally, industry consultants generally make the bulk of their livings advising and advocating on behalf of hotel owners—like Warner.  Potentially worse, when they represent hotel managers it will be on behalf of direct competitors of Four Seasons.   An industry panelist presents the risk of bias in the former circumstance and competitive harm in the latter, even if well-intentioned.

Accordingly, the Court should rule that the parties' EAAs do not provide for a panel member to be an industry candidate.  The Court should enforce the EAAs and should return the parties to finalizing their panel within two weeks with the Court's clarification. Alternatively, in the event the Court believes there has been a breakdown in the process and finds that the panel should include an industry candidate, the Court should fashion such an order consistent with Section 5 of the Federal Arbitration Act ("**FAA**").  Courts acting under Section 5 and assisting the parties to empanel arbitrators must effectuate the intent of the parties as reflected in their arbitration agreement—in this case, the EAAs.  The plain intent of the parties is *not* to use a party-appointment process but to mutually agree to a panel of neutral, impartial, and independent arbitrators.  As set forth in detail below, the parties should be directed to proceed to a process that is consistent with the parties' intent.

## II.    STATEMENT OF FACTS

### A.    <u>Background</u>

Since 1987, FSHL has managed and operated the FSSB.  FSHL operates and manages the FSSB pursuant to a Hotel Management Agreement dated November 8, 1995, between FSHL and 1260 Property and its predecessor (collectively, with amendments, the "**FSSB HMA**").  FSHL managed the FSSB for more than a decade before Warner, through 1260 Property, acquired it in 2000.  Under the FSSB HMA, FSHL has the right to manage the FSSB until December 31, 2055.  (Fiotto Decl. at ¶ 3.)[2]

Since 1993, FSR has managed and operated the FSNY.  FSR operates and manages the FSNY pursuant to the Second Amended and Restated Hotel Management Agreement dated August 1, 1996, between FSR and Hotel 57 and its predecessor (collectively, with amendments, the "**FSNY HMA**").  FSR began managing the FSNY six years before Warner, through Hotel 57, acquired it in 1999.  Under the FSNY HMA, FSR has the right to manage FSNY until December 31, 2073.  (The FSNY HMA and the FSSB HMA are collectively referred to as the "**HMAs**") (Fiotto Decl. at ¶ 4).

### B.    <u>The Dispute Underlying the Petition</u>

The Petition seeks the Court's intervention in the selection of arbitrators for a dispute that Petitioners allege relates to Respondents' purported "mismanagement" of the Hotels "in violation of its contractual and fiduciary duties."  (Pet. ¶ 16.)   Four Seasons vigorously disputes this false characterization, as it has not breached any contractual or fiduciary duties in its management of the Hotels.  In fact, throughout its time managing the Hotels, Four

---

[2] "Fiotto Decl." refers to the Declaration of Anthony S. Fiotto submitted with this Memorandum.

Seasons has worked to make them two of the most iconic properties in the world and looks forward to continuing to successfully manage the Hotels on behalf of Petitioners and per the terms of the long-standing HMAs for years to come.  For more than 60 years, Four Seasons and its affiliates have set the global standard for excellence in luxury hospitality and service. Four Seasons has proudly managed FSNY since its opening in 1993 and FSSB since 1987, and has always fulfilled its obligations under the HMAs.  (Fiotto Decl. at ¶ 5.)

Following the closure of the Hotels in early 2020 due to the COVID-19 global pandemic, Four Seasons proposed re-opening plans for each Hotel.  Warner then responded in the summer of 2020 by requiring that Four Seasons fundamentally restructure the HMAs and reduce the size and the components of the Hotels that would remain under Four Seasons' management.  (Fiotto Decl. at ¶ 6.)  When Four Seasons resisted, in early 2021 Warner claimed that Four Seasons had breached the HMAs and issued Notices of Default and Termination pursuant to the HMAs (the "**Default Notices**").  These breach claims are unfounded, and Four Seasons issued Notices of Dispute (the "**Dispute Notices**") which, under the terms of the HMAs, preclude any termination of the contracts.  Warner has subsequently refused to reopen the Hotels.  (Fiotto Decl. at ¶ 7.)

As Four Seasons has issued valid Dispute Notices under the HMAs, Petitioners' claims that Four Seasons has been terminated from their management role and "refused to vacate" the Hotels (Pet. ¶ 16) are false.  FSHL and FSR continue to manage and maintain the Hotels pursuant to the terms of the HMAs.  In fact, Warner has repeatedly taken the position that Four

Seasons must continue to operate under the terms of the HMAs, notwithstanding his refusal to reopen the Hotels.[3]

### C.      The Original Arbitration Agreements in the HMAs

The HMAs contain dispute resolution clauses that include an arbitrator selection process in which each party selects an arbitrator, and those two arbitrators then select the third panelist (the "**Party Selection Clause**").  (Fiotto Decl. at ¶ 12, Ex. 2, §20.03 of FSNY HMA and Ex. 1, §19.03 of FSSB HMA.)  The HMAs' dispute resolution clauses do not expressly provide that all three arbitrators must be neutral, impartial, or independent.[4]  (Fiotto Decl. at ¶ 13.)    Additionally, the HMAs' provisions on dispute resolution contain two additional sections that are relevant to the Petition even though the provisions have been superseded by the EAAs given Petitioners' attempt to resurrect them.

---

[3] For instance, on June 17, 2022, well after Four Seasons' purported termination, Greg Scandaglia, Warner's and Petitioners' outside counsel (and a signatory to the Petition) delivered a letter to Four Seasons' outside counsel, Paul Wagner, relating to FSSB.  In that June 17 letter, Scandaglia stated that "[u]nder the terms of [the] HMA, [FSHL] *is* the agent of 1260 BB Property LLC" (emphasis added). (Fiotto Decl. at ¶ 9.)  Mr. Scandaglia did not refer to FSHL as the *former* agent of 1260 BB Property, LLC.  One month later, on July 25, 2022, Cathy Hwang, the Chief Financial Officer of Ty Warner Hotels and Resorts, Inc. ("**TWHR**"), sent letters on behalf of Petitioners to both FSR and FSHL regarding the Annual Plans required by the HMAs for each Hotel, stating that the "Owner . . . has demanded on multiple occasions that Operator comply with its Annual Plan obligations for 2022." (Ms. Hwang sent effectively identical letters to FSHL and FSR on July 25, 2022, notwithstanding the fact that Four Seasons had previously agreed with TWHR to defer submitting an Annual Plan until the Hotels were re-opened, and Four Seasons had previously submitted 2022 Annual Plans for the Hotels on June 8, 2022.) (Fiotto Decl. at ¶ 10.)  The obligations that Ms. Hwang was insisting that Four Seasons comply with arose many months *after* Warner claims that Four Seasons had been terminated from its management role at the Hotels.

[4] When the HMAs were executed, there was no requirement, as there was when the EAAS were executed, that a party selected arbitrator be neutral, impartial or independent—the AAA rules of that time did not include Rule 13(b), which provides that party-selected arbitrators "must meet the standards of Section R-18 with respect to impartiality and independence unless the parties have specifically agreed" otherwise.  (Fiotto Decl. at ¶ 13.)

First, Section 20.03(a) of the FSNY HMA provides that "in the case of any arbitration in respect of sections 19.05 and 19.06(a), such third arbitrator shall be an independent arbitrator with at least ten years of experience in the luxury hotel business in the target market in which the Hotel competes and a partner of either Pannell Kerr Forster or one of the four largest firms of Certified Public Accountants in the United States" (the "**Industry Panelist Clause**"). (Fiotto Decl. at ¶ 15, Ex. 2, §§ 19.05, 19.06, 20.03 FSNY HMA.)  Section 19.03(a) of the FSSB HMA contains a similar provision with respect to disputes regarding Section 18.07 of that document.  (Fiotto Decl. at ¶ 16, Ex. 1, §§ 18.07, 19.03 FSSB HMA.)  These provisions reflect the parties' agreement in the HMAs that an industry panelist is *only* required for a dispute regarding Section 19.05 (*i.e.*, whether the FSNY achieved a defined performance test) or Section 19.06(a) (*i.e.*, whether Four Seasons remains one of the world's leading operators and managers of a chain of luxury and five-star hotels) of the FSNY HMA or Section 18.07 of the FSSB HMA (*i.e.*, regarding the turnover of certain books and records on termination of the FSSB HMA).  None of these HMA Sections is the basis for the purported breaches identified in the Default Notices (or in Four Seasons' subsequent Dispute Notices) (Fiotto Decl. at ¶ 18) that constitute the basis for the arbitration underlying the Petition.

The second set of relevant provisions in the HMAs provide that, in the event of a dispute, before any party may initiate arbitration, the parties must first engage in a non-binding, mediation process that involves experts in the hospitality industry.  Section 20.02(b) of the FSNY HMA and Section 19.02(b) of the FSSB HMA both provide that "each [party] shall retain an expert . . . and the experts . . . shall advise the parties of their views" (the "**Expert Mediation Clause**").  (Fiotto Decl. at ¶ 19.)

7

**D.**     <u>**The July 2021 Agreement and the May 2022 Protocol**</u>

Given the nature of the disputes set forth in the Default Notices and the Dispute Notices, the parties intentionally agreed to fundamentally alter the dispute resolution process set forth in the HMAs by entering into the July 2021 Agreement and the May 2022 Protocol.

First, the parties delineated which disputes are subject to the July 2021 Agreement. That agreement encompasses only disputes identified in the Notices of Default and Notices of Dispute.  Second, the July 2021 Agreement provided that, in lieu of the Party Selection Clause, the parties agreed to a single, consolidated arbitration in New York "before a panel of three neutral, impartial and independent arbitrators."  (Fiotto Decl. at ¶ 21, Ex. 3, at 2.)  Third, because the disputes identified in the Default and Dispute Notices do not include disputes that would have been subject to the Industry Panelist Clause, the parties dispensed with that clause altogether.  Fourth, also because the disputes do not involve matters that require particular industry knowledge, the parties replaced the Expert Mediation Clause with a clause mandating mediation before David Geronemus, a non-expert with respect to the hospitality industry. (Fiotto Decl. at ¶ 21, Ex. 3, at 2.)

The May 2022 Protocol confirmed the parties' rejection of the Party Selection Clause and the Industry Panelist Clause.[5]   Section 10 states, "[w]ith respect to selecting the three neutral, impartial and independent arbitrators referenced in the July [2021] Agreement, the Parties shall follow the following process."  (Fiotto Decl. at ¶ 23.)  As the May 2022 Protocol provides, each party submits a list of candidates to the AAA every seven business days until

---

[5] At the time of the May 2022 Protocol, the mediation before Mr. Geronemus had been completed. (Fiotto Decl. at ¶ 22.)

the panel is selected.  If there are matches on the parties' lists, the matches serve as arbitrators.

If there are no matches on the parties' lists, either party may agree to select a candidate on the

other party's list.  Importantly, only if there is a match or one party agrees to someone on the

other party's list will "[t]he Parties' counsel . . . *jointly* telephonically contact each potential

arbitrator."  (Emphasis added.)  This ensures complete neutrality, in contrast to a party-

appointed arbitrator in which a party is free to unilaterally contact a potential arbitrator in

advance of the appointment.

      The May 2022 Protocol also does not contain any variation of the Industry Panelist

Clause or otherwise require an industry arbitrator on the panel.  This reflects an additional

acknowledgement that the disputes subject to arbitration under the July 2021 Agreement and

the May 2022 Protocol do not include a dispute for which, under the original HMAs, an

industry arbitrator was required.  Moreover, in the event any hospitality knowledge was useful

in the arbitration, the parties included a provision in the May 2022 Protocol that, if a party

wishes to introduce expert testimony, comprehensive Expert Reports under Fed. R. Civ. P.

26(a)(2)(B) would be required, as well as expert depositions—an uncommon provision in a

streamlined arbitration and further confirmation that the parties rejected any requirement (and

eschewed any need) for an industry panelist.

      **E.**        **The Arbitrator Selection Process**

      Commencing on June 7, 2022, the parties began the process of submitting lists to the

AAA every seven business days except when the parties jointly and voluntarily agreed to

extend the seven-day period (which occurred on seven occasions) to conduct interviews of

candidates. These agreed-upon extensions involved accommodating the schedules of the candidates, which during the summer months proved challenging. (Fiotto Decl. at ¶ 28.)

In July 2022, after the parties had submitted their second list of eight candidates to the AAA, Four Seasons sought to accelerate the process and agreed to interview a specified retired judge from the Petitioners' list formerly of the New York State Supreme Court. On August 4, 2022, Four Seasons agreed to accept this judge as an arbitrator if the Petitioners were prepared to select an arbitrator from candidates Four Seasons identified on its first two lists. Four Seasons proposed that, after the two arbitrators had been picked, the parties could discuss the third in light of the credentials and background of the two empaneled arbitrators. (Fiotto Decl. at ¶ 31.)

Petitioners' counsel rejected this simple, expedited solution and added a new condition to the selection process, insisting that the parties include an industry arbitrator on the panel. Petitioners' counsel made this demand despite the facts that (a) the EAAs do not provide for an industry panelist, (b) the parties intentionally drafted two agreements that did not incorporate the Industry Panelist Clause, and (c) even if they had incorporated the Industry Panelist Clause in the EAAs, the clause would not, by its terms, apply to the disputes identified in the Default Notices, Dispute Notices, and in the July 2021 Agreement. (Fiotto Decl. at ¶ 32.)

Moreover, while the dispute between the parties is, indeed, "significant and highly complex" as described in the Petition, the issues to be addressed are not industry-specific issues that require industry knowledge. Rather, they are complicated legal questions relating to contractual rights, the application of legal principles, and the determination of substantial

economic damages.  The arbitration will also involve evaluating the credibility of numerous witnesses.  These are precisely the matters that arbitrators who have previously served as judges have developed significant expertise in addressing.

In any event, the proposed industry panelists identified on Petitioners' lists are not "neutral, impartial and independent" because industry consultants primarily consult for owners of hotels or resorts—that is, they are advocates for owners—or they are engaged in working for direct competitors of Four Seasons.  Four Seasons should not have such a panelist, who would be privy to Four Seasons' confidential, proprietary operational information, imposed on it.[6]  Moreover, given Four Seasons' prominence in the hospitality industry, it would be difficult to find an industry consultant who lacks ties, conflicts of interest or bias (one way or the other) toward it.  For example, in the two instances in which Petitioners asked Four Seasons to further investigate and consider an industry panelist, it was learned that one worked for three direct competitors of Four Seasons and the other, in addition to working for competitors, had decades-long relationships with a high-level former Four Seasons executive and a long-time Four Seasons consultant.  (Fiotto Decl. at ¶ 36.)

Seeking to change the selection requirements again and to subvert the parties' prior agreements, in August 2022, Warner's counsel also began insisting that the parties revert to the selection process set forth in the Party Selection Clause that was expressly superseded by the EAAs.  (Fiotto Decl. at ¶ 37.)  Warner's counsel also proposed that the parties use the "rank and strike method . . . under the AAA's Commercial Arbitration Rules."  (Pet. at 8.)   Both of

---

[6] Both the July 2021 Agreement and the May 2022 Protocol provide for confidential proceedings (and the HMAs provide for the protection of Four Seasons' proprietary information) precisely because the hospitality industry is intensely competitive.  (Fiotto Decl. at ¶ 34.)

these proposed "alternatives" were squarely rejected when the parties drafted the EAAs. Notably, with respect to the latter, it was clear that the parties intentionally rejected a rank-and-strike selection because the parties agreed in the May 2022 Protocol to use the AAA's Commercial Arbitration Rules, but omitted the rank-and-strike process provided for in those rules.  (Fiotto Decl. at ¶ 37, Ex. 6, ¶¶ 1, 10.)

In any event, the parties submitted four sets of lists to the AAA and conducted five candidate interviews.  Additionally, the parties attempted to schedule two additional interviews with retired federal judges.  One, who appeared on Four Seasons' list, declined due to scheduling conflicts, while the other, who appeared on the Petitioners' list, identified a potential conflict.  On October 26, Four Seasons agreed to interview the judge on Petitioners' list nonetheless and consider waiving any conflict if an appropriate "firewall" were erected. Petitioners' counsel refused this request.  (Fiotto Decl. at ¶ 38.)

On October 30, 2022, Four Seasons submitted a list of additional candidates to the AAA (as contemplated by the May 2022 Protocol).  Petitioners did not do so and instead filed the Petition on October 31, 2022.  (Fiotto Decl. at ¶ 39.)

## III.    ARGUMENT

### A.    <u>There is No Breakdown Under Section 5</u>

Section 5 of the FAA permits a court to appoint arbitrators upon application of a party where there is a "lapse in the naming of an arbitrator or arbitrators."  9 U.S.C. § 5.  The Second Circuit has defined a "lapse" as "a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process."  *In re Salomon Inc. Shareholders' Derivative Lit*., 68 F.3d 554, 560 (2d

Cir. 1995) (citing *Pacific Reinsurance Mgt. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1327,

1329 (9th Cir. 1987); (other citations omitted)).  The *Salomon* court further noted that a "lapse"

includes instances where parties have arrived at "deadlock in [the] naming of [an] arbitrator."

*Id.* at 560 (citing *Pacific Reinsurance*, 814 F.2d at 1329).

      Here, the Court should not find that the parties are at a "deadlock" or that a "lapse" has

occurred.  Under Section 5 of the FAA, "a party may not unilaterally manufacture a 'deadlock'

scenario in order to avoid complying with the contract to which it agreed."  *Karrena USA Inc.*

*v. Cobra Thermosolar Plats, Inc.*, 2022 WL 73518, at *3 (D. Nev. Jan. 7, 2022), report and

recommendation adopted sub nom. *Karrena USA Inc. v. Cobra Thermosolar Plants, Inc*., 2022

WL 1185012 (D. Nev. Apr. 20, 2022); *see also Adam Techs. Int'l S.A. de C.V. v. Sutherland*

*Glob Servs., Inc.*, 729 F.3d 443, 451 (5th Cir. 2013) (finding no breakdown under Section 5

when the delay was due to one party's "noncompliance" with the contractual selection

process).  In *Certain Underwriters at Lloyd's London v. Vintage Grand Condominium*

*Association, Inc.*, 2019 WL 760802 (S.D.N.Y February 6, 2019), a case upon which Petitioners

rely, the court denied petitioners' application under Section 5 because the parties had not

followed the agreed-upon selection method, observing that "courts have little business

interfering in arbitrations."  *Id*. at *2.  Here, Petitioners are seeking to abandon a process to

which they agreed by seeking to impose a selection process or a panel composition that the

parties did not agree to in the EAAs.  In repudiation of the EAAs, the Petitioners have now

made Four Seasons' agreement to an industry arbitrator a pre-condition to proceeding.

      The Petitioners' position plainly contradicts the parties' prior mutual agreements, as

evidenced by the fact that the parties rejected the Industry Panelist Clause not once but twice—

when they drafted the July 2021 Agreement and the May 2022 Protocol.  Further, even if they

had adopted the Industry Panelist Clause, that clause would not apply because the disputes

identified in the July 2021 Agreement are not the subjects of disputes to which the clause, if

present, would even apply.  It is hornbook law that, "when an agreement amends or modifies

a prior contract, the 'modifying agreement should be construed in connection with the original

contract in order to ascertain the entire intent of the parties.'"  *4 BAB LLC v. Beacon Health*

*Options, Inc.*, 2020 WL 409788, at *4 (N.D.N.Y. Jan. 24, 2020) (citations omitted); *see also*

*In re Dynegy Inc.,* 486 B.R. 585, 593 (Bankr. S.D.N.Y. 2013) (where the parties removed an

explicit prohibition from a proposed order, the court concluded that the parties intended to

remove the language and that no prohibition would be in effect.)  Here, by entering into the

EAAs, the parties clearly expressed their intent to replace the HMAs' selection process and

any requirement that an industry panelist be a member of the panel.

        Nor, for that matter, has there been a breakdown due to the passage of time.  Other than

Petitioners' unjustified insistence on an industry panelist, the process has proceeded as

contemplated.  While the EAAs required that the parties submit lists every seven business days,

the parties could voluntarily extend that period to accommodate scheduling interviews of

potential panelists.  This is exactly what happened.  This is therefore not a case involving one

party ignoring the time limits imposed on the selection process.  Nor is it a case where the

selection process' express time limits were ignored or abandoned by both parties.  Rather,

except for Petitioner's refusal to timely submit a list on October 30—the day before Petitioners

filed their Petition—the parties voluntarily extended the process to accommodate the very

interviews provided for in the EAAs.

Accordingly, the Court should deny the Petition, order the Petitioners to comply with the EAAs, and declare that the Petitioners may not insist on an industry arbitrator. The Court should also order that the panel shall consist of three retired judges. The Court should further order the parties to attempt to reach agreement on a panel within two weeks in light of the Court's clarification. Such an order is consistent with the primary purpose of the FAA, which is to enforce arbitration agreements "according to their terms." *Volt Info. Sciences v. Bd. Of Ty's.*, 489 U.S. 468, 479 (1989). Section 5 specifies that a court's authority is constrained when the contract contains a method for selecting arbitrators. Specifically, Section 5 provides that where an arbitration agreement contains a method of selecting arbitrators "such method shall be followed[.]" 9 U.S.C. § 5.

## B. The Relief Requested in the Petition is Inappropriate

### 1. *The Party Selection Clause*

Petitioners' request to reimpose the rejected Party Selection Clause conflicts with the Court's mission under Section 5 of the FAA. The Court's exercise of its authority in Section 5 is necessarily informed by the parties' contractual agreements. That is, the Court's role under Section 5 is "to give effect to the intent of the parties" as expressed in their arbitration agreement. *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.,* 689 F.3d 481, 494 (5th Cir. 2012). As the *BP Libya Ltd.* court stated:

> We are guided in our analysis by two considerations. First, that arbitration agreements, like any other contract, should be enforced according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 1748 L. Ed. 2d 742 (2011). Hence, it falls to the courts and arbitrators "to give effect to [ ] contractual limitations," and when so doing, "not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt–Nielsen*

> *S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774–75, 176 L.
> Ed. 2d 605 (2010). Second, Congress envisioned in the FAA very
> circumscribed judicial involvement in the arbitral process prior to
> the arbitration award. *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life
> Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002).

*See also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776, 177 L. Ed.

2d 403 (2010) (noting that "[t]he FAA thereby places arbitration agreements on an equal

footing with other contracts and requires courts to enforce them according to their

terms[.]"(citations omitted)); *Moss v. First Premier Bank*, 835 F.3d 260, 264 (2d Cir. 2016)

(noting that in interpreting arbitration agreements "[a]s with any contract, 'the parties'

intentions control.' To discern the parties' intentions, we look to the language of the

agreement.") (citing *Stolt–Nielsen S.A.*, 559 U.S. at 682, 130 S.Ct. at 176 L.Ed.2d 605).

Here, compelling reversion to the process set forth in the Party Selection Clause as

Petitioners request would contradict the plain intent of both parties demonstrated in the EAAs

to not use that process. The July 2021 Agreement expressly rejected the process in which each

party selects a party arbitrator and, in lieu thereof, imposed a rigorous mutual selection process

of ensuring neutrality, impartiality, and independence. That process includes that there shall

be no *ex parte* communication with a panelist candidate even before a panelist is identified.

Instead, to ensure neutrality, impartiality, and independence, any candidate must be *jointly*

contacted from the outset. (Fiotto Decl. at ¶ 23.)

The cases cited by Petitioners to support their request that the Court order an arbitration

process contrary to the parties' express intent are unavailing. In fact, the cases all stand for the

proposition that the Court should order the parties to appoint a panel consistent with the EAAs.

In *Pacific Reinsurance Management Corp.*, 814 F.2d 1324 (9th Cir. 1987), a case Petitioners

cite repeatedly (and which the Second Circuit cited in *In re Salomon Inc.,* 68 F.3d at 560 (2d Cir. 1995)), the court held that it was appropriate for the district court to appoint an arbitrator only *after* first ordering "that arbitration take place in accordance with the parties' agreement." *Pacific Reinsurance Mgmt. Corp.*, 814 F. 2d at 1329.   Although the parties were unable after that order to reach agreement, the court reasoned that Section 5 "contemplates that the parties must follow the contractual procedure for arbitrator selection if such exists." *Id*. at 1327.   The court relied on its earlier decision, *ATSA of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172 (9th Cir. 1983), *amended*, 754 F.2d 1394 (9th Cir. 1985), in which the court reversed a district court's order appointing a panel without first ordering the parties to select a panel according to their agreement: "We ordered the parties to comply with their agreement, provided that if they could not agree," the court would appoint an arbitrator under Section 5. *Pacific Reinsurance Management Corp.*, 814 F.2d at 1328.

This Court's decision in *Employers Insurance Company of Wausau v. Arrowood Indemnity Company*, 2013 WL 8655140 (S.D.N.Y Oct. 25, 2013), is directly relevant here.  In that case, the parties' arbitration agreement specified an arbitrator selection method.[7] Arrowood claimed that there was an impasse under Section 5 of the FAA in choosing an umpire and insisted on an alternative selection method, including a "striking and selection procedure."   *See* Employers Insurance Company of Wausau and Nationwide Indemnity Company's Memorandum of Law in Support of Petition to Compel Arbitration (Fiotto Decl. at ¶ 40, Ex. 7, at 3-4.); *see also* Arrowood Indemnity Company's Memorandum of Law in

---

[7] The Court's decision is brief, and for context the litigants' submissions are attached as Exhibits 7 and 8 to the Fiotto Declaration.

Opposition to Employers Insurance Company of Wausau's Motion to Compel Arbitration at

17-18.  (Fiotto Decl. at ¶ 40, Ex. 8, at 17-18.)  Arrowood also claimed that the Court should

appoint a candidate who "had a wealth of experience in the reinsurance industry."  *Id.* at 24.

The Court rejected Arrowood's positions, ruled that "the issues raised are disposed of under

Section 5 of the Federal Arbitration Act," and held that the arbitration agreements "provide the

steps for [the parties and the arbitrators] to take in the selection of an umpire [and they] shall

follow those steps forthwith."  *Employers Insurance*, 2013 WL 8655140 at *1.

    *The Stop & Shop Supermarket Company LLC v. United Food and Commercial Workers

Union Local 342, AFL-CIO, CLC*, 246 Fed. Appx. 7 (2d Cir. 2007), another of Petitioners'

cases, is similar to *Pacific Reinsurance* and to *Employers' Insurance*.  In that case, the

collective bargaining agreement between Stop & Shop and the union provided that, as disputes

arose, an arbitrator would be appointed from each parties' list of arbitrators on an alternating

basis—that is, first from Stop & Shop's list, second from the union's list, and so on.  The

parties disagreed over which party's list was next, and the district court ruled that it was the

union's list.  The Second Circuit affirmed, holding that the district court "properly exercised

its authority under [Section 5 of the FAA] by appointing an arbitrator in a way that *gave effect

to the parties' agreement*."  *Id.* at 10 (emphasis added).[8]

---

[8] *Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Syndicate 53*, 615 Fed. Appx.
22 (2d Cir. 2015), another of Petitioners' cases, is not inconsistent with *Stop & Shop* or *Pacific
Reinsurance Management Corp.* and involved a different issue.  In *Odyssey Reinsurance Co*., the
Second Circuit reversed the district court's ruling that it could not intervene in the party's selection
process because "a district court cannot entertain an attack upon the qualifications or partiality of
arbitrators until after the conclusion of the arbitration and the rendition of an award."  *Id.* at n.1.  All of
Petitioners' other cases confirm that the Court's authority under Section 5 is to order the parties to
follow the EAAs.  In *Sprint Communications Co., L.P. v. Albany County, New York*, 2018 WL 2390121
(N.D.N.Y. May 25, 2018), the court refused to select a panel but ordered the parties' two selected
arbitrators to choose the third, which is what their agreement expressly provided.  *Id.* at *3.  And in all

Petitioners rely on two cases—*GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*, No. 1:11-CV-00907 AWI JLT, 2011 WL 6780927 (E.D. Cal. Dec. 27, 2011), and *Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*, 922 F. Supp. 1534 (S.D. Fla. 1996)—for the proposition that the court has the power to impose the Party Selection Clause despite the parties' express rejection of it in the EAAs.  Neither of these decisions, however, supports their argument.  In *GAR Energy*, the magistrate judge ordered that the parties each select an arbitrator and that those arbitrators select the third panelist because this process would "most closely approximate the parties' intent when forming the arbitration agreement."  *Id*. at *10.  The court reached this conclusion only because that process was explicitly called for in the parties' arbitration agreement.  *Id.* at *2.  Far from supporting Petitioners' recommendation that this Court impose the rejected Party Selection Clause, *GAR Energy* makes plain that the Court should seek to "approximate the parties' intent" in the EAAs.  *Id.* at *10.

Petitioners' reliance on *Creative Tile* is equally misplaced.  In that case, the Florida court held that it had the authority under the FAA to order the parties to each select an arbitrator (who would then select an umpire) where the relevant Italian law-governed arbitration agreement was silent "on the number of arbitrators or procedures on appointment of the arbitrators."  922 F Supp. at 1549.  Here, the Court need not guess at the parties' intent on these

---

of Petitioners' remaining cases, Section 5 of the FAA was part of the parties' selection method.  *See Evangelical Lutheran Good Samaritan Society v. Moreno*, 2019 WL 999736, at *2  (D. New Mexico February 28, 2019) (the parties agreed to mutually agree on a panel and, failing agreement, "Section 5 of the FAA shall control"); *National Union Fire Ins. Co. of Pittsburgh v. Source One Staffing LLC*, 2016 WL 5940920 at *1 (S.D.N.Y. October 13, 2016) (the parties agreed that, if their party selected arbitrators could not agree on a third, "either party may make application" to the court for the selection); *Baylor Health Care Sys. v. Beech St. Corp.*, 2013 WL 2095777 at *2 (N. D. Tex., May 15, 2013) (same).

issues as it is plainly spelled out in the EAAs and confirmed by the parties' rejection of the Party Selection Clause.

## 2. *The Industry Panelist Clause*

For the same reasons, the Court should deny Petitioner's request to impose the rejected Industry Panelist Clause.  It is black-letter law that the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms."  *AT&T Mobility LLC*, 563 U.S. 333, 344 (2011) (citing *Volt Info. Sciences, Inc.*, 489 U.S. at 478).  Notwithstanding this clear guidance from the Supreme Court, the Petitioners ask the Court to abandon the EAAs and either impose the rejected Industry Panelist Clause or impose a requirement that an industry consultant be part of the arbitration panel.  Both requests squarely contradict the plain intent of the parties not to require an industry consultant in any part of the dispute process—an intent further confirmed by the rejection of the expert mediation process in the original HMAs in favor of mediation in front of a non-expert.

Further, the specific alternative relief requested in the Petition—that the Court select a panel from the parties' existing lists and include on that panel at least one arbitrator with experience in the hospitality industry—would not be appropriate because, as mentioned above, the nature of the dispute requires legal expertise on issues of contractual rights, application of legal principles and damages, and evaluating the credibility of witnesses, not industry knowledge.  Additionally, imposing an industry candidate on Four Seasons in this process unfairly subjects Four Seasons to the prejudicial risk of owner bias or competitive harm, as discussed above.  It is for similar reasons that courts, in cases cited by Petitioners, select retired judges when they are required to appoint an arbitrator under Section 5.  *See, e.g., Moreno*,

2019 WL 999736 at *8 (D. New Mexico February 28, 2019) (appointing a retired judge because he would have the necessary experience "finding facts, reaching conclusions of law, and deciding cases on their merits"); *Baylor Health Care Sys.*, 2013 WL 2095777 (N.D. Tex. May 15, 2013) (appointing a retired judge because, given Baylor Health Care's prominence, "it will be difficult to find an arbitrator with experience in the health care industry who lacks ties, conflicts of interest or bias relating to" Baylor Health Care).

### C.    To Expedite the Panel Selection Process, Four Seasons Proposes Solutions That Effectuate the Parties' Intent

As set forth above, the EAAs clearly signal the parties' intent to ensure that their dispute is heard by a panel of neutral, impartial, and independent arbitrators. To achieve this goal, the parties elected not to utilize the HMAs' original selection process of having each party select an arbitrator and instead agreed upon on a selection process premised on mutually agreed arbitrators. The parties further demonstrated their intent that the arbitration panel must not include an industry participant. Accordingly, if the Court does not order the parties to select a panel of retired judges after clarifying the meaning of the EAA, as discussed above, Four Seasons respectfully submits that the Court should select the three arbitrators from the candidates previously submitted by the parties who previously served as judicial officers. Four Seasons also respectfully submits that the candidates should be chosen from the parties' first two lists exchanged on June 7, 2022, and June 28, 2022, which reflect the parties' earlier selections.[9]

---

[9] For the Court's guidance, the arbitration under the EAAs is seated in Manhattan. New York law applies to disputes concerning the FSNY and California law applies to the disputes concerning the FSSB. (Fiotto Decl. at ¶ 27.)

In the further alternative, if, despite the EAAs and the parties' rejection of the Industry Panelist Clause, the Court orders that the panel must include an individual with industry experience, Four Seasons respectfully requests that the Court order the following:  First, the panel shall consist of two retired judges and one arbitrator with industry experience.  To compose the panel within ten days, each party shall select from the other party's first two lists an arbitrator who is a retired judge and shall also jointly agree on a third arbitrator, who shall be an industry arbitrator who meets the criteria of neutrality, impartiality and independence and who also has a law degree.  Given that the industry candidates have been submitted to date only by the Petitioners, the third arbitrator shall be a candidate who is not already on any party's list.

As an additional alternative, if the Court orders that the panel include an individual with industry experience, Four Seasons requests the Court order the following protocol: (1) within ten days, each party shall select from the other party's first two lists an arbitrator who is a retired judge; (2) each party shall simultaneously also submit to the Court (and provide to the opposing counsel) a list of three industry arbitrators who meet the criteria of neutrality, impartiality, and independence and also possess a law degree; (3) within three business days thereafter, counsel for both parties shall exchange and submit to the Court a letter of no more than three pages explaining counsel's position with respect to each industry arbitrator candidate; (4) within three business days thereafter, counsel shall exchange and submit to the Court reply letters that may not exceed three pages; and (5) the Court shall select the third arbitrator from the two lists submitted by the parties.

Four Seasons further requests that any Order of the Court make clear that all relevant laws and the rules of the AAA with respect to disqualifying conflicts shall continue to apply. Similarly, Four Seasons requests that any Order of the Court confirm that the three arbitrators selected shall select a Chair of the arbitral panel and that nothing about the selection process described herein (or Ordered by the Court) shall imply that the third arbitrator shall be the Chair, as Four Seasons respectfully submits that the identity of the Chair is a matter to be decided by the panel members after appointment.

## IV.    CONCLUSION

For the reasons described above, the Petition should be denied and the Court should instead enter an order consistent with Section III.A or III.C herein.

Dated: November 14, 2022         Respectfully submitted,
       Boston, Massachusetts

                                 MORRISON & FOERSTER LLP

                                 By:  */s/ Anthony S. Fiotto*
                                       Anthony S. Fiotto
                                       Nathan D. Reilly
                                       Julia Koch
                                       200 Clarendon Street
                                       Boston, MA 02118
                                       (617) 648-4774
                                       afiotto@mofo.com
                                       nreilly@mofo.com
                                       jkoch@mofo.com

                                       *Counsel for Respondents*
                                       *FSR International Hotels Inc. and*
                                       *Four Seasons Hotels Limited*