# Exhibit 2

# SECOND AMENDED AND RESTATED HOTEL MANAGEMENT AGREEMENT

## A M O N G

## REGENT INTERNATIONAL HOTELS, INC.

And

## HOTEL 57 L.L.C.

---

## FOUR SEASONS HOTEL, NEW YORK

- 48 -

9.03    **Use of Proprietary Materials by Owner**

    (a)    Owner shall not use or permit the use of any Proprietary Materials, save and except in accordance with this Agreement and the Proprietary Materials License Agreement.

    (b)    Owner shall not disclose or permit the disclosure of any Proprietary Materials at any time to any Person, save and except in accordance with section 9.03(d) or (e) or as may be permitted by Operator pursuant to this Agreement or the Proprietary Materials License Agreement or to those agents, representatives, employees, officers or directors of Owner that must have access to any Proprietary Materials to exercise the rights, or to perform the obligations, of Owner under this Agreement and only for such purposes. Owner shall use its reasonable efforts to ensure that any such Person is aware of the confidential and proprietary nature of the Proprietary Materials and agrees to abide by the same restrictions in respect thereof as are applicable to Owner under this Agreement.

    (c)    Owner shall not release any written material (whether in a prospectus, information circular, offering document, marketing campaign or otherwise) or issue any press release or make any other public statement or release any material containing Proprietary Materials or in any way relating to this Agreement or to the Hotel or

- 49 -

to Operator or to any of its Affiliates without the prior written consent of Operator. which consent may be unreasonably withheld and delayed.

(d) The obligations of Owner to Operator under this section 9.03 shall not apply to any Proprietary Materials which (i) are or become generally available to the public other than as a result of the action of Owner or any of its Affiliates or any of their respective agents. representatives. employees. officers or directors, (ii) become available to Owner on a non-confidential basis from a source other than Operator or any of its Affiliates or any of their respective agents. representatives. employees. officers or directors: provided that such source is not bound by a confidentiality agreement with Operator or any of its Affiliates or any of their respective agents, representatives. employees. officers or directors or otherwise prohibited from transmitting Proprietary Materials to Owner by a contractual. legal or fiduciary obligation. or (iii) was known to Owner on a non-confidential basis prior to disclosure to Owner by Operator or any of its Affiliates or any of or any of their respective agents. representatives. employees. officers or directors.

(e) In the event that Owner or any of its Affiliates or any of their respective agents. representatives. employees. officers or directors become compelled by any Applicable Law to disclose any Proprietary Materials, Owner shall provide Operator with prompt written notice so that Operator may seek a protective order or other appropriate remedy. In the event that such protective order or other remedy is not obtained, Owner or any of its agents, representatives, employees, officers or directors will furnish only that portion of such Proprietary Materials which is required by any Applicable Law and each such Person shall exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded such Proprietary Materials.

- 50 -

(f)     Owner acknowledges and agrees that Operator would not have an adequate remedy at law and would be irreparably harmed in the event that any of the provisions of this section 9.03 were not performed in accordance with their specific terms or were otherwise breached. Accordingly, Owner agrees that Operator shall be entitled to injunctive relief to prevent any breach of this section 9.03 and to specifically enforce the terms and provisions hereof in addition to any other remedy to which Operator may be entitled at law or in equity.

(g)     Operator shall not issue any press release or make any public statement concerning Owner except for press releases, public statements and articles featuring the Hotel or as may be required by Applicable Law. Operator shall notify Owner prior to the issuance of any press releases, public statements or articles featuring the Hotel, where practicable, and shall provide Owner with a copy of all such press releases, public statements and articles. Operator shall not disclose or permit the disclosure of confidential information relating to the financial status of the Hotel, except as may be required by Applicable Law or except as may be permitted by Owner or to those agents, consultants, representatives, employees, officers or directors of Operator that must have access to such information to exercise the rights, or to perform the obligations of Operator under this Agreement and only for such purposes. Operator shall use its reasonable efforts to ensure that any such Person is aware of the confidential nature of such information and agrees to abide by the same restrictions in respect thereof as are applicable to Operator under this Agreement.

19.05        **Owner's Right to Terminate**

(a)    Subject to the provisions of sections 19.05(b), 19.05(c) and 19.05(d) and in addition to any right arising out of section 19.02, Owner shall have the right to terminate this Agreement at any time following the Termination Test Effective

- 87 -

Date, if, in the two consecutive Fiscal Years immediately preceding the date of calculation of Net Operating Profit (any such two consecutive Fiscal Years a "Test Period"), the Hotel does not achieve positive Net Operating Profit.

(b) Notwithstanding the provisions of section 19.05(a), Owner's right to terminate this Agreement in respect of any Test Period shall only be exercised (i) by written notice by Owner to Operator within 90 days of receipt by Owner of the statement of profit and loss of the Hotel from Operator in accordance with section 10.07(b) for the immediately preceding Fiscal Year, and (ii) with respect to the operations of the Hotel in the immediately preceding Test Period.

(c) Notwithstanding the provisions of section 19.05(a), Owner shall not have the right to terminate this Agreement in respect of any Test Period, if:

(i) during either Fiscal Year of such Test Period,

(A) (1) the Achieved Room Revenue of the Hotel for such Fiscal Year is equal to or greater than the Achieved Room Revenue of any one of the top five Comparable Hotels for such Fiscal Year ranked in terms of Achieved Room Revenue (the "Test Hotels") or (2) if the number of Comparable Hotels are equal to or less than eight, the Achieved Room Revenue of the Hotel for such Fiscal Year is equal to or greater than the Achieved Room Revenue of any one of the top four Comparable Hotels for such Fiscal Year ranked in terms of Achieved Room Revenue (in either case, the "Test Hotels"), and

  (B)  the Achieved Profit For Rooms Available of the Hotel for such Fiscal Year is equal to or greater than the Achieved Profit For Rooms Available of any one of the Test Hotels for such Fiscal Year; or

 (ii) Operator or any of its Affiliates pays to Owner an aggregate amount equal to the amount by which the Hotel failed to achieve positive Net Operating Profit in the second Fiscal Year of such Test Period.

(d) Notwithstanding the provisions of section 19.05(a). Owner shall not have the right to terminate this Agreement in respect of any Test Period. if. during either Fiscal Year of such Test Period one or more of the following events occurs, which event or events in their totality. after giving effect to the proceeds received from any applicable business interruption insurance. materially and adversely affect Net Operating Profit. Achieved Room Revenue or Achieved Room Profit:

 (i) damage or destruction to all or any part of the Hotel:

 (ii) a Capital Refurbishing Program affecting 20% or more of the Hotel:

 (iii) interference by any Governmental Authority;

 (iv) expropriation of all or any part of the Hotel:

 (v) strikes, walkouts or lock-outs:

 (vi) wars. fires. acts of God. disasters. riots. boycotts or shortages of material or labour; or

- 89 -

  (vii) any other event similar to those described in this section 19.05(d) beyond the control of Operator and not having a comparable effect on Comparable Hotels.

### 19.06 Owner's Additional Rights to Terminate

In addition to any rights arising out of sections 20.02 and 20.06, Owner shall have the right to terminate this Agreement if:

  (a) an independent expert engaged by Owner and approved by Operator and having at least ten years experience in the luxury hotel business shall at any time during the Operating Term determine that Operator and its Affiliates are no longer considered to be one of the world's leading operators and managers of a chain of luxury and five star hotels; or

  (b) at any time during the Operating Term, Owner's right to the use of the name "Four Seasons" for the Hotel shall cease for any reason whatsoever (other than by reason of the failure by Owner to fulfil or otherwise comply with its covenants and obligations under section 9.03 of this Agreement or the Proprietary Materials License Agreement) and such cessation of use continues after the expiration of the cure period contemplated by section 19.01(e).

- 94 -

20.02      **Dispute Resolution**

Unless otherwise specifically provided for in this Agreement. all disputes. controversies. claims or disagreements arising out of or relating to this Agreement (singularly. a "Dispute". and collectively, "Disputes") shall be resolved in the following manner:

(a)    first. within 10 days after the receipt of notice of a Dispute by one party to the other. the parties shall negotiate in good faith for a period of 30 days in an effort to resolve the Dispute:

(b)    second. if the parties are unable to resolve the Dispute within such 30 day period. they shall retain a mutually acceptable expert to assist them in resolving the

- 95 -

Dispute within 10 additional days, failing which they shall each retain an expert on the eleventh day and the two experts thus chosen shall together act as the expert for the purposes of this section 20.02(b). If either party shall fail to appoint an expert as required hereunder, the expert appointed by the other party shall be the sole expert. Within 90 days after the experts (or such single expert) have been retained, the experts (or such single expert) shall, on a non-binding basis, advise the parties in writing of their views. The expenses of the experts (or such single expert) shall be borne equally; and

(c) third, if the parties are still unable to resolve the Dispute within such 90 day period, the parties shall resort to the arbitration procedures set forth in section 20.03; and

(d) fourth, any party to the Dispute shall be entitled to join any Dispute proceeding arising out of this Agreement with any other Dispute proceeding arising out of this Agreement.

20.03    Arbitration

Except as otherwise provided in section 19.04 and this section 20.03, any Dispute arising out of or relating to this Agreement shall be settled by arbitration as follows:

(a) each party shall be entitled to serve upon the other party written notice of its desire to settle the matter by arbitration. Within 10 days after receipt by the other party of such notice, each party shall appoint an arbitrator and within 10 days of their appointment the two arbitrators so chosen shall nominate a third independent arbitrator; provided that in the case of any arbitration in respect of sections 19.05 and 19.06(a), such third arbitrator shall be an independent arbitrator with at least ten years experience in the luxury hotel business in the target market in which the

- 96 -

Hotel competes and a partner of either Pannell, Kerr, Forster or one of the four largest firms of Certified Public Accountants in the United States. If within such 10 day period the two arbitrators fail to nominate the third arbitrator, upon written request of either party, the third arbitrator shall be appointed by the American Arbitration Association and both parties shall be bound by the appointment so made. If either party shall fail to appoint an arbitrator as required under this section 20.03(a), the arbitrator appointed by the other party shall be the sole arbitrator of the matter;

(b)  the decision of the arbitrators (or such single arbitrator) shall be made within 30 days of the close of the hearing in respect of the arbitration (or such longer time as may be agreed to, if necessary, which agreement shall not be unreasonably withheld) and the decision of a majority of the panel (or such single arbitrator) when reduced to writing and signed by them shall be final, conclusive and binding upon the parties hereto, and may be enforced in any court having jurisdiction;

(c)  the arbitration shall be held at New York City and, except for those procedures specifically set forth in this section 20.03, shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association as in effect on the date hereof; and

(d)  the arbitrators (or such single arbitrator) shall determine the proportion of the expenses of such arbitration which each party shall bear; provided, however, that each party shall be responsible for its own legal fees.

Notwithstanding anything contained in this section 20.03 either Owner or Operator shall be entitled to (i) commence legal proceedings (in which case the provisions of sections 23.09 and 23.10 governing jurisdiction and service of process shall govern) seeking such mandatory, declaratory or injunctive relief as may be necessary to define or protect the rights and enforce the

- 97 -

obligations contained herein pending the settlement of a Dispute in accordance with the arbitration procedures set forth in this section 20.03. (ii) commence legal proceedings (in which case the provisions of section 23.09 and 23.10 governing jurisdiction and service of process shall govern) involving the enforcement of an arbitration decision or award arising out of this Agreement, or (iii) join any arbitration proceeding arising out of this Agreement with any other arbitration proceeding arising out of this Agreement.