UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hotel 57 L.L.C. and 1260 BB Property, LLC<br><br>　　　　　Plaintiffs,<br><br>　-against-<br><br>FSR International Hotels Inc. and Four Seasons Hotels Limited,<br><br>　　　　　Defendants. | Case No. 1:22-cv-09331 (LLS) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION FOR APPOINTMENT OF ARBITRATORS

　　　　　　　　　　　　　　PRYOR CASHMAN LLP
　　　　　　　　　　　　　　7 Times Square, 40th Floor
　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　Phone: (212) 421-4100
　　　　　　　　　　　　　　Fax: (212) 326-0806

　　　　　　　　　　　　　　SCANDAGLIA RYAN LLP
　　　　　　　　　　　　　　55 E. Monroe Street, Suite 3440
　　　　　　　　　　　　　　Chicago, IL 60603
　　　　　　　　　　　　　　Phone: (312) 580-2020
　　　　　　　　　　　　　　Fax: (312) 782-3806

　　　　　　　　　　　　　　*Counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    A.    The Parties Are Locked in an Impasse, which this Court Is Empowered to Resolve .................................................................................................................. 2

          1.    The Parties' Disagreement Cannot Be Resolved Under the Protocol ............. 3

          2.    This Court Is Empowered to Break the Parties' Impasse ............................... 5

    B.    The Court Should Enter an Order Remedying the Parties' Impasse ....................... 5

          1.    Returning to the HMAs Is the Approach Most Aligned with the Parties' Intent ................................................................................................. 6

          2.    If the Court Does Not Proceed with Party Appointment, a Panel Should Be Constituted with One Industry Arbitrator .................................................. 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                                                                                  **PAGE(S)**

*Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*,
   729 F.3d 443 (5th Cir. 2013) ....................................................................................................4

*BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*,
   689 F.3d 481 (5th Cir. 2012) .................................................................................................6, 9

*Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L*,
   922 F. Supp. 1534 (S.D. Fla. 1996) ..........................................................................................7

*Employers Ins. Co. of Wausau v. Arrowood Indem. Co.*,
   2013 WL 8655140 (S.D.N.Y. Oct. 25, 2013) .......................................................................4, 5

*GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*,
   No. 1:11-CV-00907 AWI JLT, 2011 WL 6780927 (E.D. Cal. Dec. 27, 2011),.........................7

*Karrena USA Inc. v. Cobra Thermosolar Plats, Inc.*,
   2022 WL 73518 (D. Nev. Jan. 7, 2022) ....................................................................................4

*Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London*
   *Syndicate 53*,
   615 F. App'x 22 (2d Cir. 2015) .................................................................................................5

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
   814 F.2d 1324 (9th Cir. 1987). ..................................................................................................7

*Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union Loc.*
   *342, AFL-CIO, CLC*, 2006 WL 1148728 (S.D.N.Y. May 1, 2006) (LBS)...............................7

*Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union Loc.*
   *342, AFL-CIO, CLC*,
   246 F. App'x 7 (2d Cir. 2007) ...................................................................................................5

**STATUTES AND RULES**

9 U.S.C. § 5............................................................................................................................ *passim*

9 U.S.C. § 206..........................................................................................................................1, 2

Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC (collectively, "Owner")[1] respectfully submit this reply memorandum of law, along with the Reply Declaration of Gregory J. Scandaglia ("Scandaglia R. Decl."),[2] in further support of their petition pursuant to 9 U.S.C. §§ 5 & 206 (the "Petition").

## PRELIMINARY STATEMENT

The central facts in this proceeding are uncontested.  The parties' arbitrator selection Protocol requires mutual consent for the appointment of each arbitrator, and lacks any mechanism to break a deadlock.  The parties are deadlocked, unable to agree to the appointment of a single arbitrator despite having labored for more than <u>five months</u> under the Protocol to constitute an arbitral panel, having exchanged <u>eight</u> lists of potential candidates and having considered <u>sixty-five</u> potential arbitrators.  As the parties' filings reflect, this impasse is unsurmountable.  Owner believes that the panel should include an arbitrator with hospitality experience considering the highly complex and industry-specific issues underlying the parties' disputes.  Four Seasons, by contrast, contends (baselessly, in Owner's view) that any industry panelist would necessarily be biased and conflicted.  Those positions cannot be reconciled and, consequently, the parties have failed to bridge their divide despite five months of efforts.

Four Seasons suggests that the parties are not truly at an impasse and should return to the Protocol to select a panel within two weeks.  (FS Br. pp. 12-15[3].)  But Four Seasons does not even attempt to explain why the parties will suddenly succeed where they have failed for five months, and there is no realistic prospect that they will.  Moreover, Four Seasons fails to identify any analogous case in which a court has refused to intervene under Section 5, instead relying on cases

---

[1] Capitalized terms not defined herein have the same meaning as set forth in Owner's moving papers.
[2] Exhibits to the Scandaglia Decl. in Support of the Petition (Dkt. No. 7) are cited herein as "Ex. __."
[3] "FS Br." refers to Four Seasons' Memorandum of Law in Opposition to the Petition for Appointment of Arbitrators (Dkt. No. 19).  "Op. Br." refers to Owner's Memorandum of Law in Support of the Petition (Dkt. No. 3).

1

involving arbitration agreements that – unlike the Protocol – contained mechanisms to break deadlocks.

Inevitably, Four Seasons quickly pivots off its opposition to court intervention under Section 5, asking this Court to break the impasse by appointing a panel according to Four Seasons' preferences alone (*i.e.*, with three retired judges). (FS Br. pp. 21-22.) While Four Seasons seeks to justify this request by claiming that the parties intentionally "rejected" the selection of any arbitrator with industry experience when they entered into the Protocol, that suggestion is false. The Protocol, by design, empowered the parties to submit <u>any</u> individuals for consideration and did not exclude the selection of individuals with hospitality (or any other type of) experience.

Four Seasons' effort to dictate the background and qualifications of every arbitrator on the panel is directly contrary to the parties' agreements, as it deprives Owner of any say in the backgrounds and qualifications of the arbitrators. By contrast, Owner's proposed resolution – party-appointment consistent with the terms of the parties' hotel management agreements or, failing that, direct appointment of a panel including one industry arbitrator – reflects a balanced approach that better effectuates the parties' intent. Owner thus respectfully requests that the Court exercise its authority under 9 U.S.C. §§ 5 & 206 to resolve the parties' impasse in that manner.

## ARGUMENT

### A. The Parties Are Locked in an Impasse, which this Court Is Empowered to Resolve.

Despite five-months of failed efforts, Four Seasons first asserts that the parties are not at a true impasse and asks that this Court order the parties to return to the Protocol and "finali[ze] [a] panel within two weeks." (FS Br. p. 3.) But Four Seasons offers no explanation for why anything would change if the parties returned to the same failed process. To the contrary, Four Seasons concedes that mutual consent is required for the appointment of each arbitrator under the Protocol,

and that the Protocol provides no mechanism for breaking a deadlock. Congress enacted Section 5 of the FAA to address this precise situation, and the Court should exercise its jurisdiction to intervene here without delay.

### 1. The Parties' Disagreement Cannot Be Resolved Under the Protocol.

Four Seasons does not seriously dispute that the parties are deadlocked and cannot constitute a panel under the Protocol.[4] Instead, Four Seasons claims that Owner wrongfully "manufactured" the present impasse by seeking the appointment of an industry expert to the arbitral panel after the parties allegedly "agreed" to "reject" such candidates. (FS Br. p. 13.) But this argument is both factually and legally without merit.

It was Four Seasons – not Owner – that took a hardline position during the selection process by refusing to agree to the appointment of an entire category of arbitrators. (Scandaglia Decl., ¶ 24 (Dkt. No. 7).) Although Owner proposed a number of industry arbitrators, it also proposed many non-industry arbitrators (including former judges). (*See id.* Exs. 4, 6, 8, 10.) By contrast, Four Seasons roundly refused to nominate or agree to the appointment of any industry arbitrators. (*Id.* ¶ 24.) Owner was within its rights to refuse to fold to Four Seasons' unilateral demand for three arbitrators with its preferred background and qualifications.

In any event, nothing in the Protocol prevented either party from seeking the appointment of candidates with particular credentials or taking a categorical position such as the one espoused by Four Seasons. In negotiating that agreement, the parties never discussed (let alone agreed) that a party could not seek the appointment of an arbitrator with industry (or any other kind of)

---

[4] To be clear, Four Seasons does not and cannot claim that Owner refused to participate in the Protocol process. Owner and Four Seasons spent roughly five months evaluating and interviewing potential candidates, and at no point did Four Seasons raise any objection that Owner was failing to participate in the process in good faith. Although Four Seasons now asserts that Owner "refused to timely submit a list on October 30" (FS Br. p. 14), the parties never agreed to exchange lists on October 30, as they had done for each prior list exchange. In fact, when Owner filed this action on October 31, it was still unaware that Four Seasons intended to or had submitted a list on October 30.

3

experience. (Scandaglia R. Decl. ¶ 21.) Rather, as the express terms of the Protocol reflect, the parties designed a selection process that granted each party wide leeway to grant or withhold consent to the appointment of any candidate, without imposing limits on that discretion. (*Id.* ¶¶ 20-21.)

Failing to account for these essential characteristics of the Protocol, Four Seasons falls back on inapposite authority concerning arbitration agreements that – unlike the Protocol – contain provisions to address and resolve deadlocks. In *Karrena USA Inc. v. Cobra Thermosolar Plats, Inc.*, the arbitration agreement empowered the arbitral institution to make appointments to break a deadlock, and the court held that judicial intervention therefore was unnecessary, rejecting the plaintiff's effort to end-run the agreement and prevent the arbitral institution from appointing an arbitrator. 2022 WL 73518, *3-4 (D. Nev. Jan. 7, 2022), *report and recommendation adopted*, 2022 WL 1185012 (D. Nev. Apr. 20, 2022). *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, similarly involved an arbitration agreement where the International Centre for Dispute Resolution was empowered to appoint a panel without the agreement of the parties. 729 F.3d 443, 451 (5th Cir. 2013). Since the Protocol contains no such mechanism to break the current deadlock, these cases are irrelevant.

This Court's decision in *Employers Ins. Co. of Wausau v. Arrowood Indem. Co.*, 2013 WL 8655140 (S.D.N.Y. Oct. 25, 2013) (Stanton, J.), also cited by Four Seasons (FS Br. p. 17), is similarly distinguishable and supports Owner's request for judicial intervention. There, multiple arbitration agreements were at issue, certain of which included a failsafe selection mechanism to break a deadlock, while others did not. (*See* Fiotto Decl., Ex. 7 at 2-3 (Dkt. No. 20-7)). The Court held that the parties must proceed with the failsafe process when provided for in the applicable agreement, but that the Court had the authority to appoint arbitrators under Section 5 with respect

4

to the agreements lacking such a mechanism (as does the parties' Protocol). *Arrowood*, 2013 WL 8655140 at *1. *Arrowood* thus confirms this Court's authority to intervene when, as here, there is an unresolvable impasse.[5]

### 2. This Court Is Empowered to Break the Parties' Impasse.

Ultimately, the parties are at an impasse not because they failed to abide by the Protocol, but because the Protocol requires consensus, and the parties cannot agree. There has been both "a lapse in time in the naming of the arbitrator" and a "mechanical breakdown in the arbitrator selection process[;]" accordingly, this Court is both empowered and obligated to intervene and take action to constitute an arbitral panel. *Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Syndicate 53*, 615 F. App'x 22, 22-23 (2d Cir. 2015) (cleaned up) (noting that such deadlocks are the "precise situation Section 5 was designed to address"); *see also Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union Loc. 342, AFL-CIO, CLC*, 246 F. App'x 7, 11 (2d Cir. 2007) (noting that courts are "obligat[ed]" to resolve impasses in arbitral panel formation).

Given that the parties are at an impasse that cannot be resolved under the Protocol, this Court should exercise its express authority under the FAA to resolve the deadlock.

### B. The Court Should Enter an Order Remedying the Parties' Impasse.

The simplest and best approach for this Court to follow is to return the parties to the process they agreed to under the HMAs, whereby each party appoints one arbitrator and the third arbitrator is chosen by agreement of the two-party appointees or, failing that, the AAA. (Ex. 1, § 20.03(a); Ex. 2, § 19.03(a).) Reverting to the HMAs is appropriate as the Protocol has proven unworkable,

---

[5] Four Seasons additionally purports to find support for its objection to the appointment of an industry arbitrator in this same decision. (FS Br. pp. 17-18.) But Your Honor's opinion does not address whether an arbitrator with industry experience should or should not be appointed in the event of an unresolvable impasse. *Arrowood*, 2013 WL 8655140 at *1. Instead, the Court's holding relied on the straight-forward proposition that, if a failsafe process exists, the parties must use it.

and the HMAs are the last written agreement expressing the parties' preferred arbitration procedures. Party appointment is an approach repeatedly adopted by other courts. (*See* p. 7, *infra*; Op. Br. pp. 12-13.)

In the alternative, if the Court is disinclined to use the process the parties agreed to in the HMAs, it should resolve the impasse by directly appointing all three arbitrators in a way that most closely reflects the intent of the parties. Here, Owner has made its preference for at least one arbitrator with direct experience in the hospitality industry clear. This Court should respect that preference – and the parties' prior agreements – by directly appointing at least one arbitrator with such industry experience.

> 1. **Returning to the HMAs Is the Approach Most Aligned with the Parties' Intent.**

In resolving an impasse under Section 5 of the FAA, a court should attempt to give effect to the intent of the parties as reflected in their arbitration agreement. *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 494 (5th Cir. 2012). In its Opposition, Four Seasons repeatedly mischaracterizes the parties' agreements in an attempt to obfuscate the parties' intent.

The parties have only ever agreed to two processes for selecting arbitrators: the Protocol and the HMAs. The consensus-based selection process under the Protocol has failed (*see* pp. 2-4, *supra*) and provides no mechanism for breaking the parties' impasse. That leaves only one other previously agreed-to selection process: party-appointment in accordance with the HMAs.

To evade that straight-forward conclusion, Four Seasons implies that the parties' Letter Agreement precludes a party-appointment process (even after the Protocol is set aside). That is wrong. In negotiating the Letter Agreement, neither Four Seasons nor Owner proposed – let alone agreed – that it would be inappropriate to use a party-appointment process, and no provision of the Letter Agreement speaks to the use of such a process. (Scandaglia R. Decl. ¶¶ 9-11.) Instead, the

6

Letter Agreement confirmed that the HMAs remain in force and effect, did not reflect any intent to reject party-appointment. (*Id.*; *see also* Fiotto Decl., Ex. 3 at 2 (Dkt. No. 20-3).) A return to the process set forth in the HMAs would best effectuate the parties' agreements and expectations.

A return to the party-appointment process is consistent with not only the parties' intent but also the well-established precedent in this circuit and throughout the country cited in Owner's Opening Brief. (Op. Br. pp. 12-13.) Four Seasons' effort to distinguish that authority elides key facts and repeatedly misstates central holdings. For example, Four Seasons contends that *GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.* does not support Owner's position, when in fact it is directly on point. (FS Br. p. 19.) There, the court reformed the parties' arbitration clause "to most closely approximate the parties' intent when forming the arbitration agreement," and ordered the selection of party arbitrators – exactly the relief Owner requests. No. 1:11-CV-00907 AWI JLT, 2011 WL 6780927 at * 10 (E.D. Cal. Dec. 27, 2011), *report and recommendation adopted,* No 1:11-CV-00907 AWI JLT, 2012 WL 174952 (E.D. Cal. Jan. 20, 2012). So too with *Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L,* which directly supports the proposition that a court is free to order the appointment of a panel in any manner consistent with overall party intent. 922 F. Supp. 1534, 1540 (S.D. Fla. 1996) (directing parties to each select party-appointed arbitrators).[6]

Where, as here, the parties are unable to compose a panel using a contractually agreed-upon process such as the Protocol, it is appropriate for the Court to order the appointment of arbitrators under a process consistent with the parties' intent and expectations. Here, that is best

---

[6] Four Seasons' other attempts to distinguish guiding precedent similarly fail. Four Seasons misconstrues *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.* by ignoring that the court endorsed direct appointment because "the contractual selection method seemed doomed from the start." 814 F.2d 1324, 1327 (9th Cir. 1987). Similarly, Four Seasons distorts the holding of *Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union Loc. 342, AFL-CIO, CLC* by failing to recognize that the parties there were not working under a doomed process but rather disputed which party's turn it was to select a party-appointed arbitrator. *See Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union Loc. 342, AFL-CIO, CLC*, 2006 WL 1148728, at *3 (S.D.N.Y. May 1, 2006) (LBS), *aff'd,* 246 F. App'x. 7 (2d Cir 2007).

reflected by the only selection process the parties have agreed to use that has not already failed – party-appointment in accordance with the HMAs.

### 2. If the Court Does Not Proceed with Party Appointment, a Panel Should Be Constituted with One Industry Arbitrator.

Even if the Court does not break the parties' impasse through the party-appointment process set forth in the HMAs, it still should give effect to the parties' settled expectations by appointing a panel with at least one arbitrator with hotel industry experience.

Four Seasons' proposed approach – running roughshod over Owner by imposing its preferred panel of three former judges – has no basis in any agreement between the parties. Ironically, while Four Seasons repeatedly argues that the Court should follow the intent of the parties, Four Seasons' approach would frustrate that intent as evidenced in the Protocol and the HMAs. Each of these agreements guaranteed that Owner would have a say in the selection of arbitrators either through party-appointment of a preferred arbitrator (under the HMAs), or through Owner's ability to prevent the placement of candidates to the panel without its express assent (under the Protocol).

In support of its position, Four Seasons bafflingly claims that the Letter Agreement and the Protocol reflect an agreement to "dispense" with or "reject" the selection of arbitrators with industry experience. (FS Br. pp. 8, 12, 20.) But the plain text of the agreements provide no support for Four Seasons' assertion, as neither addresses industry experience and both, to the contrary, expressly protect Owner's right to have a say in the composition of a panel. (*See* Scandaglia R. Decl. ¶¶ 10-12, 17-18.)

Other than its mischaracterization of the parties' agreements, Four Seasons' objections to the appointment of an industry arbitrator, at their core, reflect nothing more than its subjective preferences. But the parties' agreements do not give Four Seasons the power to dictate ***all three***

members of the panel while utterly ignoring Owner's preferences. For that reason, the Court need not conduct any detailed analysis of Four Seasons' purported objections to an industry arbitrator. *See BP Expl. Libya Ltd.*, 689 F.3d at 494 (noting that a court should attempt to give effect to the intent of the parties).

Even if the Court were to delve into the merits of Four Seasons objections, the result would be the same. *First*, Four Seasons' assertion that the Arbitration does not involve industry-specific issues is flatly wrong. The parties' highly complex dispute relates to the management of two world-class luxury hotels and implicates lengthy and complex hotel management agreements, a wide range of operations from labor and revenue management to maintenance to capital expenditures, and various industry customs, practices and standards. *Second*, Four Seasons' purported confidentiality concerns (*see* FS Br. p. 11) have absolutely no basis in fact. As in any arbitration, confidential information will be shared with participants in the proceeding, including industry participants who serve as fact or expert witnesses in the arbitration. There is no basis to conclude that an arbitrator would violate his or her ethical and confidentiality obligations by missing any of Four Seasons' information. *Third*, Four Seasons' claims about bias similarly lack any factual basis as Four Seasons has not even asserted, and certainly cannot show, that each of the industry candidates proposed by Owner is conflicted. The parties and the Court are plainly capable of identifying an industry expert who is an appropriate arbitrator in this matter.

\*   \*   \*

## CONCLUSION

For the foregoing reasons, Owner respectfully requests that the Court enter an order providing for the appointment of arbitrators in the manner requested above.

Dated: November 21, 2022
New York, New York

Respectfully submitted,

   /s/  *Todd E. Soloway*
Todd E. Soloway
Bryan T. Mohler
PRYOR CASHMAN LLP
7 Times Square, 40th Floor
New York, NY 10036
Phone: (212) 421-4100
Fax: (212) 326-0806
Email: tsoloway@pryorcashman.com
      bmohler@pryorcashman.com

Gregory J. Scandaglia
Joseph R. Swee
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
Phone: (312) 580-2020
Fax: (312) 782-3806
Email: gscandaglia@scandagliaryan.com
      jswee@scandagliaryan.com

*Counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC*