UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hotel 57 L.L.C. and 1260 BB Property, LLC<br><br>Plaintiffs,<br><br>-against-<br><br>FSR International Hotels Inc. and Four Seasons Hotels Limited,<br><br>Defendants. | Case No. 22-cv-09331<br><br>Hon. Louis L. Stanton |

### DECLARATION OF GREGORY J. SCANDAGLIA IN SUPPORT OF REPLY IN SUPPORT OF OWNER'S PETITION FOR AN ORDER DIRECTING <u>APPOINTMENT OF ARBITRATORS</u>

Pursuant to 28 U.S.C. § 1746, GREGORY J. SCANDAGLIA declares:

1. I am a founder and partner at the law firm Scandaglia Ryan LLP, counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC (collectively, "Owner") in this action. I submit this declaration in support of Owner's Reply in Support of its Petition for an Order Directing the Appointment of Arbitrators.

2. As set forth in my prior Declaration in Support of Owner's Petition for an Order Directing the Appointment of Arbitrators, the dispute in the underlying arbitration (the "Arbitration") between Owner and Defendants FSR International Hotels Inc. and Four Seasons Hotels Limited (collectively, "Four Seasons") implicates two separate luxury hotel properties, Four Seasons Hotel New York ("FSNY") and Four Seasons Resort The Biltmore Santa Barbara ("FSSB"). Four Seasons managed each of those properties subject to a separate hotel management agreement. The hotel management agreement for FSNY is referred to herein as the "FSNY HMA," and the hotel management agreement for FSSB is referred to herein as the "FSSB HMA."

3.	The FSNY HMA and the FSSB HMA each contain provisions governing the resolution of disputes between Owner and Four Seasons.  (Fiotto Ex. 1, §§ 19.02, 19.03; Fiotto Ex. 2, §§ 20.02, 20.03).[1]

4.	In the event of a dispute involving FSSB, the FSSB HMA provides that Owner and Four Seasons first attempt to negotiate in good faith for 20 days.  (Fiotto Ex. 1, § 19.02(a).)  In the event those negotiations do not result in a resolution, then the parties are to proceed to an advisory opinion phase during which either one mutually agreeable expert or two party-appointed experts have 30 days to prepare a non-binding report advising the parties of their views about the dispute.  (*Id.* § 19.02(b).)  If that process also does not lead to a resolution, then the parties are to submit their dispute to binding arbitration before a panel of three arbitrators in the City of Los Angeles, California.  (*Id.* §§ 19.02(c), 19.03(c).)

5.	The FSNY HMA provides for a separate dispute resolution process for disputes involving FSNY.  The process begins with a 30-day good faith negotiation period.  (Fiotto Ex. 2, § 20.02(a).)  That is followed by a 90-day advisory opinion phase involving an expert (or experts) appointed under the FSNY HMA.  (*Id.* § 20.02(b).)  If that process does not lead to a resolution, then the parties are to submit their dispute to binding arbitration in New York City, New York before a panel of three arbitrators appointed under the FSNY HMA.  (*Id.* §§ 20.02(c), 20.03(c).)

6.	The disputes at issue in the Arbitration involve Owner's termination of Four Seasons at both FSNY and FSSB due to Four Seasons' extensive mismanagement of each property in violation of its contractual and fiduciary duties to Owner.  Consequently, the dispute resolution provisions of the FSSB HMA and the FSNY HMA, if unmodified, would have required the parties to submit their disputes to separate proceedings on different timelines involving different arbitral

---

[1] "Fiotto Ex." refers to exhibits attached to the Declaration of Anthony Fiotto in Support of Memorandum in Opposition to Petition for Appointment of Arbitrators ("Fiotto Decl.").

2

panels in different cities. The parties recognized that multiple parallel and disjointed proceedings would impose unnecessary burden, delay, and complexity.

7. To avoid such a state of affairs, the parties negotiated and entered into the July 28, 2021 Letter Agreement (the "Letter Agreement"). (Fiotto Ex. 3.)

**The Letter Agreement**

8. The Letter Agreement replaced the negotiation and advisory opinion phases with a single consolidated mediation to be held within approximately three weeks after the execution of the Letter Agreement.[2] And the Letter Agreement provided for a single, consolidated arbitration in New York City before one panel of arbitrators of three neutral, impartial and independent arbitrators. The Letter Agreement thus provided a streamlined, consolidated process for resolving the parties' dispute through a single proceeding.

9. In its Opposition to Petition for Appointment of Arbitrators (the "Opposition") and accompanying declaration, Four Seasons asserts that the Letter Agreement created a new selection process that "rejected" party-appointment and industry arbitrators. That is wrong.

10. The parties' negotiations concerning the Letter Agreement were conducted by Mr. Fiotto and me. During the course of those negotiations, Mr. Fiotto and I did not propose or agree that it would be inappropriate for a panel to include party-appointed arbitrators or one or more industry arbitrators. And we did not propose or agree that a panel should consist exclusively of former judges.

---

[2] Contrary to Four Seasons' assertion in its Opposition and the accompanying declaration, the parties did not agree to replace the advisory opinion processes under the HMAs with a consolidated mediation "because the disputes do not involve matters that require particular industry knowledge." (Fiotto Decl., Dkt. No. 20, ¶ 21.) In fact, during the negotiation of the Letter Agreement, Mr. Fiotto and I never discussed – and certainly did not agree – that the disputes do not involve matters that require industry knowledge. Instead, Mr. Fiotto and I acknowledge that the non-binding advisory opinion processes under the HMAs were unlikely to lead to a resolution of the parties' disputes. We further discussed and agreed that conducting two separate advisory opinion processes on different schedules with different experts would impose undue expense, burden, and delay. That is why the parties agreed through the Letter Agreement to promptly hold a single consolidated mediation.

11. Consistent with the parties' negotiations, the Letter Agreement does not include any provision precluding party-appointment of arbitrators or the appointment of industry arbitrators, or requiring that arbitrators have judicial experience.

12. Presumably because the Letter Agreement does not contain any provision that rejects party-appointment or industry arbitrators, Four Seasons purports to find such a rejection implicit in the Letter Agreement's reference to a panel of three "neutral, impartial and independent" arbitrators. Four Seasons appears to contend that neutrality, impartiality, and independence are inconsistent with party-appointment or industry arbitrators. That is wrong.

13. Four Seasons' cites versions of the AAA's Commercial Arbitration Rules from 1993 and 1996, but those rules do not apply to the arbitration underlying this action. Both the FSNY HMA and the FSSB HMA provide for arbitration conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") as in effect on the date" of each agreement (*i.e.*, November 8, 1995 and August 1, 1996). (Fiotto Ex. 1, § 19.03; Fiotto Ex. 2, § 20.03(c).) Each set of Commercial Arbitration Rules in effect as of those dates provided that an arbitration would be governed by the Commercial Arbitration Rules in effect <u>as of the date of an arbitration demand</u>, thereby incorporating future amendments to the Commercial Arbitration Rules. (Reply Decl. Ex. 1, Section 1 of the AAA's Commercial Arbitration Rules dated November 1, 1993 ("These rules and any amendment of them shall apply in the form obtained at the time the demand for arbitration or submission agreement is received by the AAA."); Reply Decl. Ex. 2, Section 1 of the AAA's Commercial Arbitration Rules dated July 1, 1996 (same).)[3] The Arbitration therefore is governed by the AAA's current Commercial Arbitration Rules.

---

[3] "Reply Decl. Ex." refers to exhibits attached hereto.

14. Under the AAA's current Commercial Arbitration Rules, all arbitrators are subject to standards of neutrality, impartiality, and independence absent written agreement otherwise among the parties. (*See* Reply Decl. Ex. 3, Sections R-13(b) & R-18.) Section R-18(a) states that "[a]ny arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for," among other things, "partiality or lack of independence" and "inability or refusal to perform his or her duties with diligence and in good faith."[4] (*Id.* at Section R-18(a).) Neither the FSNY HMA nor the FSSB HMA contains a written agreement opting out of the standards provided for in Section R-18.

15. In proceedings governed by the AAA's Commercial Arbitration Rules, party-appointed and industry arbitrators are routinely appointed, reflecting that Section R-18's standards do not preclude their appointment.

16. In short, under the plain terms of the FSNY HMA and the FSSB HMA, the Arbitration is governed by the AAA's current Commercial Arbitration Rules. Those Rules include standards regarding neutrality, impartiality, and independence. As the text of the Rules and customary practices in AAA arbitrations reflect, the appointment of party-appointed arbitrators and industry arbitrators is consistent with those standards. The Letter Agreement's reference to "neutral, impartial and independent" arbitrators thus neither alters the arbitrator selection process under the HMAs nor reflects a rejection of the appointment of party or industry arbitrators.

17. Finally, Four Seasons' asserts in its Opposition and accompanying declaration that the Letter Agreement reflects an agreement by the parties "to dispense[] with" the provision of the

---

[4] Relatedly, the AAA's Code of Ethics for Arbtirators in Commercial Disputes (effective March 1, 2004) provides in its Notes on Neutrality that: "This Code establishes a presumption of neutrality for all arbitrators, including party-appointed arbitrators, which applies unless the parties' agreement, the arbitration rules agreed to by the parties or applicable laws provide otherwise." Likewise, Cannon IX(A) of the Code provides that: "In tripartite arbitrations to which this Code applies, all three arbitrators are presumed to be neutral and are expected to observe the same standards as the third arbitrator."

FSNY HMA and the FSSB HMA providing that, for certain types of disputes, the third arbitrator must have at least ten years of experience in the hotel business (which Four Seasons refers to as the "Industry Panelist Clause[s]"). (Fiotto Decl., Dkt. No. 20, ¶ 21.) That is not accurate. During the negotiation of the Letter Agreement, Mr. Fiotto and I did not discuss – and did not agree to modify or dispense with – the Industry Panelist Clauses. Consistent with that fact, the Letter Agreement does not include any provision modifying or dispensing with the Industry Panelist Clauses. Because the Letter Agreement provides that the FSNY HMA and the FSSB HMA remain in full force and effect except as amended by the Letter Agreement (Fiotto Ex. 3 at 2), the Industry Panelist Clauses have not been dispensed with and remain operative provisions of the FSNY HMA and the FSSB HMA.

18. For these reasons and those set forth in my prior declaration, the Letter Agreement does not, as Four Seasons claims, memorialize or reflect any agreement by the parties to reject party-appointed or industry arbitrators.

**The Protocol**

19. After the Arbitration was initiated, Owner and Four Seasons entered into a Stipulated Arbitration Protocol dated May 17, 2022 (the "Protocol") which established a new, consensus-based process for selecting arbitrators described in the Petition and my prior declaration. (*See* Ex. 3.)[5]

20. Under the party-appointment selection process provided for in the FSNY HMA and the FSSB HMA, Owner's consent was required for the appointment of one arbitrator (*i.e.*, the party-appointed arbitrator that it nominated). The Protocol, by contrast, provided that Owner's consent is required for the appointment of all three arbitrators. In agreeing to the Protocol, Owner

---

[5] "Ex." refers to exhibits attached to my prior declaration (Dkt. No. 7).

relied on the requirement that the Owner must consent before any arbitrator candidate would be appointed to the panel. Owner's intent in agreeing to the Protocol was to pursue a cooperative effort by which the parties could efficiently constitute an appropriate, balanced panel. Owner would not have entered into the Protocol if it had given Four Seasons the authority to unilaterally impose a panel consisting solely of arbitrators with Four Seasons' preferred background and experience.

21.     During the course of the parties' negotiations concerning the Protocol, which were conducted by Mr. Fiotto and me, neither Mr. Fiotto nor I asserted or agreed that it would be inappropriate to constitute a panel with one or more industry arbitrators or that the panel should consist exclusively of former judges. Consistent with that fact, the Protocol does not include any provision requiring that arbitrators have judicial experience or prohibiting arbitrators with industry experience. Thus, the Protocol did not reflect any agreement to reject industry arbitrators or to constitute a panel consisting exclusively of former judges.

22.     Consistent with that understanding, Owner has included industry candidates on each of the four lists of arbitrator candidates that it submitted pursuant to the selection process under the Protocol.

23.     The disputes in the Arbitration implicate lengthy and complex hotel management agreements, a wide range of operations from labor and revenue management to maintenance to capital expenditures, and various industry customs, practices and standards. Since the outset of the arbitrator selection process, Owner has recognized the value of having an industry arbitrator with pertinent experience and knowledge. Early in the arbitrator selection process after the execution of the Protocol and consistently after that, I communicated to Mr. Fiotto that Owner believed an appropriate panel should include at least one industry arbitrator. During arbitrator

candidate interviews that the parties conducted pursuant to the Protocol process, multiple candidates who were former judges spoke highly of the value that industry arbitrators can provide on a multi-member arbitration panel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 21, 2022
Chicago, Illinois

                                                                             _____
                                                                             GREGORY J. SCANDAGLIA, ESQ.