ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X
HOTEL 57 L.L.C. and 1260 BB
PROPERTY, LLC,

                    Plaintiffs,

          - against -

FSR INTERNATIONAL HOTELS INC.
and FOUR SEASONS HOTELS LIMITED,

                    Defendants.

- - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  6/8/23

22 Civ. 9331 (LLS)

OPINION & ORDER

## I.   Background

This case, familiarity with which is presumed, relates to an arbitration proceeding between Hotel 57 L.L.C. ("Hotel 57") and 1260 BB Property, LLC ("1260 Property," collectively with Hotel 57, "Owners") and Four Seasons Hotels Limited ("FSHL") and FSR International Hotels Inc. ("FSR" and collectively with FSHL, "Four Seasons"). Since 1993, Four Seasons has managed and operated the Four Seasons Resort The Biltmore Santa Barbara ("FSSB") and the Four Seasons Hotel New York ("FSNY"). Owners acquired FSSB in 2000 and FSNY in 1999.

Owners' and Four Seasons' relationship is governed by two Hotel Management Agreements—one governing the management of FSNY ("FSNY HMA") and the other governing the management of FSSB ("FSSB HMA" and collectively with FSNY HMA, the "HMAs"). See Dkt. No. 4 Exs. 1 & 2. The HMAs each contain an arbitration

provision that requires any dispute to be resolved by a panel of three arbitrators. Each party is to appoint one of the arbitrators. Then, within ten days of their appointment, the two party-appointed arbitrators are to nominate a third independent arbitrator, who, in certain types of disputes,[1] must have at least ten years of experience in the luxury hotel business. In the event the party-appointed arbitrators are unable to agree upon the third panel member, the American Arbitration Association ("AAA") is to complete the panel by making the final appointment.

In February 2021, Owners served Four Seasons a Notice of Default alleging they were in violation of their contractual and fiduciary duties. Shortly thereafter, in March 2021, Owners served notices terminating Four Seasons' management of both hotels under the HMAs. Four Seasons contested their termination and served Owners with Dispute Notices. An arbitration before the AAA was initiated on March 29, 2022.

The HMAs required the parties to conduct two separate arbitrations before separate panels. To avoid having multiple proceedings to resolve the disputes as defined in the Notice of

---

[1] The HMAs require the third panelist to have ten years of luxury hotel experience when the issue being disputed relates to whether FSHY has achieved a defined performance test, whether Four Seasons remains one of the world's leading operators and managers of luxury hotel chains, or whether certain books and records are turned over upon the termination of the FSSB HMA.

Default and Notice of Dispute, the parties entered into a July 28, 2021 letter agreement (the "Letter Agreement"), to provide for a "single, consolidated arbitration . . . in New York, New York before a panel of three neutral, impartial and independent arbitrators." Dkt. No. 4 ¶ 7.

The parties further eschewed applying the arbitration provisions in the HMAS to these disputes when they entered the May 2022 Protocol (collectively with the Letter Agreement, the "Existing Arbitration Agreements, EAAs"). The May 20022 Protocol laid out the process for selecting the three neutral, impartial, and independent arbitrators: Each party was to submit to the AAA a list of eight candidates. If there were overlapping candidates on their lists ("a joint candidate"), the AAA was to obtain certain disclosures from the candidate. The AAA would then share with the parties the information on the joint candidates as well as the names of the unmatched candidates. Next, the parties were to then identify any unmatched candidates from the other's list that they found acceptable (a "matched candidate"). Finally, the parties were to jointly contact the joint candidates and the matched candidates. If the candidate was available and willing, they would become a member of the panel. This process was to be repeated every seven days until a panel was convened.

On June 7, 2022, the parties each submitted their first list of potential arbitrators, none of which had any joint

candidates. Rather than following the Protocol and next reviewing the other's list for any matched candidates, the parties convened joint interviews of two candidates, one for each party. But, following the interviews, the parties did not agree to appoint either candidate.

They, therefore, each submitted their second list of potential candidates on July 28, 2022. Again, there were no joint candidates, and the parties deferred selecting any matched candidates, instead interviewing a potential candidate from Owners' list, who they ultimately declined to appoint.

This process proceeded unsuccessfully for a third and fourth round, resulting four additional candidates being interviewed but none being appointed.

In light of the parties' inability to agree on any candidate, Owners applied to this Court to break the alleged impasse and appoint the panel or alter the process the parties must use to select one.

## II. Analysis

The court has limited jurisdiction to appoint an arbitrator. Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc., No. 18 Civ. 10382, 2019 WL 760802, at *2 (S.D.N.Y. Feb. 6, 2019). The Federal Arbitration Act ("FAA") explicitly states "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator. . ., such method

shall be followed." 9 U.S.C.A. § 5.  The court has the duty of appointing an arbitrator, upon the application of either party, only if there is a "lapse in the naming of an arbitrator." Id. Lapse refers to a "lapse in time in the naming of the arbitrator" or "some other mechanical breakdown in the arbitrator selection process," like a deadlock in naming the arbitrator. In re Salomon Inc. Shareholders' Derivative Litig., 68 F.3d 554, 560 (2d Cir. 1995).

The parties dispute whether they are in a deadlock over selecting the arbitrators. Owners admit that the reason for the deadlock is the parties' "fundamentally different perspectives on the appropriate composition of the panel." Four Seasons argues that Owners' insistence on an industry arbitrator as a pre-condition to proceeding is Owners' attempt to unilaterally manufacture a deadlock to avoid complying with the contract to which it agreed. While Owners have made their preference for an industry arbitrator known, their penchant for an insider cannot be said to have driven the appointment process to a halt. Owners proposed a number of non-industry arbitrators, including former judges, in addition to industry professionals. As the deadlock has not been orchestrated by a party, the Court need not worry about its particular cause as Section 5 applies irrespectively. See 9 U.S.C. § 5 ("if for any other reason there shall be a lapse" the court can appoint the arbitrator).

All that matters here is that there is a clear deadlock.
The parties have worked for five months to convene a panel,
during which they exchanged eight lists of potential
arbitrators, consisting of sixty-five different candidates, and
interviewed numerous front-runners. And during that time, they
were unable to agree to the appointment of a single individual.
See Stop & Shop Supermarket Co. LLC v. United Food & Com.
Workers Union Loc. 342, AFL-CIO, CLC, 246 F. App'x 7, 11 (2d
Cir. 2007) (finding a deadlock amounted to a lapse in the naming
of an arbitrator when each "party had designated its own pick,
whom the other side refused to recognize as the legitimate
arbitrator"). In these circumstances, and with no indication
that the parties will come to a consensus, it is appropriate for
the Court to break the impasse between them.

The question, then, is how the Court should appoint the
arbitrators. Owners urge the Court to appoint the arbitrators in
accordance with the original selection process defined in the
HMAs or, in the alternative, from the candidates proposed by the
parties during the list-and-interview process. Four Seasons
objects to such procedures and instead argues the arbitration
panel should consist of retired judges, selected either by the
parties or by the Court from the candidates included in the
parties' first two lists exchanged on June 7, 2022 and June 28,
2022.

The court must appoint "an arbitrator in a way that [gives] effect to the parties' agreement." Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union Loc. 342, AFL-CIO, CLC, 246 F. App'x 7, 11 (2d Cir. 2007). Arbitration agreements, like any other contract, must be enforced according to their terms. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). Therefore, to discern the parties' intentions, courts look to the language of the arbitration agreement. Moss v. First Premier Bank, 835 F.3d 260, 264 (2d Cir. 2016). "[W]hen an agreement amends or modifies a prior contract, the "modifying agreement should be construed in connection with the original contract in order to ascertain the entire intent of the parties." T.M. Real Est. Holding, LLC v. Stop & Shop Supermarket Co. LLC, No. 12 Civ. 1808, 2013 WL 603325, at *7 (S.D.N.Y. Feb. 14, 2013), aff'd sub nom. T.M. Real Est. Holdings, LLC v. Stop & Shop Supermarket Co. LLC, 543 F. App'x 41 (2d Cir. 2013).

The EAAs' procedure by which to unanimously appoint three independent arbitrators has proven to be unworkable. The parties' intentions when signing the EAAs have been frustrated and shown to be impractical, if not impossible, to achieve and after expending half a year and fruitlessly collecting lists of approximately sixty-five candidates, it is time to abandon the concepts expressed in the EAAs.

The Court directs the parties to return to the system articulated in the original HMAs, which are not only the parties' first-expressed choice, but also have proven workable and satisfactory in a wide range of circumstances.

If the parties resolve this matter within the next thirty days, that solution will prevail. If such an alternative resolution is not reached by July 10, 2023, they shall forthwith put into operation the time-tested procedures provided in the HMAs, their original agreements.

So Ordered.

Dated: New York, New York
       June    8    , 2023

                              Louis L. Stanton
                              LOUIS L. STANTON
                              U.S.D.J.

- 8 -