UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hotel 57 L.L.C. and 1260 BB Property, LLC, | |
| Plaintiffs, | Case No. 1:22-cv-09331 (LLS) |
| -against- | Hon. Louis L. Stanton |
| FSR International Hotels Inc. and Four Seasons Hotels Limited, | |
| Defendants. | |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

PRYOR CASHMAN LLP
7 Times Square, 40th Floor
New York, NY 10036
Phone: (212) 421-4100
Fax: (212) 326-0806

SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
Phone: (312) 580-2020
Fax: (312) 782-3806

*Counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 3

    A.    The HMAs and the Parties' Dispute ........................................................................... 3

    B.    The Parties' Arbitration Agreements .......................................................................... 3

    C.    The Arbitrator Selection Process ................................................................................ 4

    D.    The Breakdown and the Instant Proceeding .............................................................. 5

    E.    Four Seasons Brings This Improper Motion To Delay the Arbitral Process ............... 5

ARGUMENT ............................................................................................................................ 6

    A.    Four Seasons Fails To Meet the Standard for Reconsideration ................................... 7

        1.    This Court Did Not Err in Returning the Parties to the HMAs ......................... 7

            a.    The Court correctly held that party appointment consistent with the HMAs is the best method of breaking the parties' impasse ........................ 8

            b.    Nothing precluded the Court ordering the parties to proceed with party appointment consistent with the HMAs ............................................. 9

        2.    This Court Did Not Err in Finding an Impasse ............................................... 12

        3.    Owner Did Not Manufacture an Impasse ....................................................... 13

    B.    There Is No Manifest Injustice in Breaking the Parties' Deadlock ............................. 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE(s)**

## CASES

*Avis Rent A Car Sys, Inc. v. Garage Emps. Union Loc. 272*,
   791 F.2d 22 (2d Cir. 1986)..................................................................................................7

*BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*,
   689 F.3d 481 (5th Cir. 2012) ........................................................................................10, 11

*Corines v. Am. Physicians Ins. Tr.*,
   769 F. Supp. 2d 582 (S.D.N.Y. 2011).................................................................................7

*Creative Tile Mktg. Inc. v. SICIS Int'l S.r.L*,
   922 F. Supp. 1534 (S.D. Fla. 1996) ...................................................................................11

*GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*,
   No. 1:11-cv-00907 (AWI), 2011 WL 6780927 (E.D. Cal. Dec. 27, 2011) .............................11

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000)..................................................................................6

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013)...................................................................................................6

*Odyssey Reinsurrrance Co. v. Certain Underwriters at Lloyd's London Syndicate 53*,
   615 F. App'x 22 (2d Cir. 2015) ...........................................................................................9

*Parrish v. Sollecito*,
   253 F. Supp. 2d 713 (S.D.N.Y. 2003)......................................................................1, 6, 7, 8

*Schoolcraft v. City of New York*,
   298 F.R.D. 134 (S.D.N.Y. 2014) ........................................................................................7

*Shell Oil Co. v. CO2 Comm., Inc.*,
   589 F.3d 1105 (10th Cir. 2009) .........................................................................................11

*Stop & Shop Supermarket Co. v. United Food & Com. Workers Union Loc. 342*,
   246 F. App'x 7 (2d Cir. 2007) .............................................................................................9

*Wexler v. Allegion (UK) Ltd.*,
   No. 16 CIV. 2252 (ER), 2021 WL 1226596 (S.D.N.Y. Mar. 31, 2021)........................6, 7, 14

*Wiener v. AXA Equitable Life Ins. Co.*,
   No. 16 CIV. 4019 (ER), 2022 WL 950979 (S.D.N.Y. Mar. 29, 2022)......................................1

**STATUTES AND RULES**

9 U.S.C. § 5 ............................................................................................................... *passim*

Fed. R. Civ. P. Rule 59(e) ................................................................................................ 1, 5, 6, 14

Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC (collectively, "Owner") respectfully submit this memorandum of law, along with the Declaration of Gregory J. Scandaglia ("Scandaglia Decl."), in opposition to Defendants FSR International Hotels Inc. and Four Seasons Hotels Limited's (collectively, "Four Seasons") Motion for Reconsideration (the "Motion") of the Court's Opinion and Order dated June 8, 2023 (the "Opinion and Order" or "Op."). For the reasons set forth below, Four Seasons' Motion should be denied.

## PRELIMINARY STATEMENT

A motion for reconsideration is not an invitation to reargue issues already decided merely because a party disagrees with the court's determination, which is precisely what Four Seasons improperly seeks here. To the contrary, it is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003). Since Four Seasons does not (and cannot) identify any applicable changes in the law, any newly developed facts, or any controlling authority that this Court overlooked, its Motion should be denied.

In essence, Four Seasons argues that even while this Court correctly stated the law, reconsideration is nonetheless appropriate simply because Four Seasons disagrees with this Court's reasoning and therefore being made to abide by it would be "manifestly unjust." (FS Br. p. 3.) This is a blatant misuse of the Rule 59(e) reconsideration procedure, which is not intended as a vehicle "to secure a rehearing on the merits with regard to issues already decided" merely because a party disagrees. *Parrish*, 253 F. Supp. 2d at 715. It is well-settled that, when a party "offers substantially the same arguments [it] offered on the original motion," its "motion for reconsideration must be denied." *Wiener v. AXA Equitable Life Ins. Co.*, No. 16 CIV. 4019 (ER), 2022 WL 950979, at *8 (S.D.N.Y. Mar. 29, 2022); *see also Parrish*, 253 F. Supp. 2d at 715

1

(denying motion for reconsideration where court had previously considered issues raised by the motion).

The Opinion and Order effected no "injustice" upon Four Seasons. Under Section 5 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 5, federal courts are empowered to appoint arbitrators if "for any . . . reason there shall be a lapse in the naming of an arbitrator or arbitrators." Upon Owner's request, this Court invoked its statutory authority to break a five-month impasse between the parties, which crystallized after the submission of eight lists of potential arbitrators, and the consideration of sixty-five different arbitrator candidates. Given that the parties could not mutually agree to any candidates, the process became "impractical, if not impossible" and thus the Court returned the parties to the arbitrator selection process in their original agreements, which reflected the parties' intent as their "first-expressed choice" and which has "proven workable and satisfactory in a wide range of circumstances." (Op. pp. 7-8.)

While Four Seasons also argues that the Opinion and Order is manifestly unjust because it forces Four Seasons, in its view, to expend money and time engaging in "the hollow formality of arbitrating a dispute before an improperly constituted panel," (FS Br. pp. 3, 15), its reasoning is circular and flawed. If accepted, any party could frustrate – and effectively nullify – any order entered pursuant to Section 5 of the FAA by simply objecting to its enforcement because the party disagrees with it and therefore subjectively believes any ensuing arbitration will not result in a "proper award."

Four Seasons' Motion only extends and exacerbates the delay in adjudicating Owner's claims related to Four Seasons' extensive mismanagement of the Four Seasons Hotel New York and the Four Seasons Resort The Biltmore Santa Barbara, furthering Four Seasons' dilatory interests. Four Seasons' Motion should be denied.

## FACTUAL BACKGROUND

A.   **The HMAs and the Parties' Dispute**

Over 20 years ago, Owner acquired the Four Seasons Hotel New York ("FSNY") and the Four Seasons Resort The Biltmore Santa Barbara ("FSSB"). (Scandaglia Decl. ¶ 2.) Four Seasons manages each hotel pursuant to hotel management agreements ("HMAs"), one governing the management of FSNY, and the other governing the management of FSSB. (*Id*.)

Owner and Four Seasons are in a contractual dispute regarding Four Seasons' extensive mismanagement of FSNY and FSSB, in violation of its contractual and fiduciary duties, to the direct and substantial harm of Owner. (*Id*. ¶ 3.) Owner served detailed default notices on Four Seasons in February 2021 (*id.*) and then, after Four Seasons failed to cure those defaults, served notices in March 2021 terminating Four Seasons' management of both hotels under the HMAs (*id.,* ¶ 4). However, Four Seasons refused to vacate the properties and contested Owner's termination of the HMAs, initiating an arbitration before the American Arbitration Association ("AAA") on March 29, 2022. (*Id*.)

B.   **The Parties' Arbitration Agreements**

Each HMA contains an arbitration provision. (*Id*. ¶ 5; *see also* ECF Nos. 7-1, 7-2.) After the dispute arose regarding Four Seasons' mismanagement and termination, the parties recognized that, in the absence of any modification, the HMAs would require the parties to conduct two separate arbitrations before separate panels. (Scandaglia Decl*.* ¶ 5.) To avoid multiple proceedings, the parties entered into a July 28, 2021 letter agreement (the "Letter Agreement"), to provide for a "single, consolidated arbitration . . . in New York, New York before a panel of three neutral, impartial and independent arbitrators."[1] (*Id*.)

---

[1] Four Seasons asserts in its Motion that Petitioners have "repeatedly acknowledged" the July 2021 Agreement "'provided for' the <u>mutual selection of</u> 'three neutral, impartial and independent arbitrators.'" (FS Br. p. 20) (emphasis

3

## C. The Arbitrator Selection Process

Each HMA also incorporates a well-established and commonplace arbitrator selection process: *first,* each party was to appoint one arbitrator. (*Id.* ¶ 6.) Then, within ten days of their appointment, the two party-appointed arbitrators were to nominate a third independent arbitrator. (*Id.*) In the event the party-appointed arbitrators are unable to agree upon the third panel member, then the AAA is to complete the panel by making the final appointment. (*Id.*)

After arbitration was initiated before the AAA, Owner and Four Seasons entered into a Stipulated Arbitration Protocol dated May 17, 2022 (the "Protocol"). (*Id.* ¶ 7; ECF No. 7-3.) In addition to addressing the scope of discovery in the arbitration, the Protocol established a modified, consensus-based process for selecting arbitrators that the parties expected would result in the prompt constitution of a complete panel. (Declaration of Gregory J. Scandaglia dated Nov. 21, 2022, ECF No. 29, ¶¶ 19-20.)

Under the Protocol, each party was to simultaneously submit the names of eight potential arbitrators (or "candidates") to the AAA. (Scandaglia Decl. ¶ 8.) If a candidate appeared on both lists (a "joint candidate"), the AAA would obtain certain disclosures from the candidate. (*Id.*) The AAA then was to provide those disclosures to the parties along with the names of all other candidates identified on the lists (*i.e.*, those who were identified by only one party as potential arbitrators (the "unmatched candidates")). (*Id.*) After that, each party had an opportunity to identify any unmatched candidate from the other's list that it found acceptable (a "matched candidate"). (*Id.*) The parties then would jointly telephonically contact the joint candidates and

---

added). Four Seasons purports to support that assertion with a lengthy quote from a declaration submitted by Owner. Tellingly, the key language – "mutual selection" – is not a quote from the declaration but rather was inserted by Four Seasons. Owner has made clear repeatedly in prior submissions that the July 2021 Agreement did not displace party appointment. *See, e.g.,* Declaration of Gregory J. Scandaglia dated Nov. 21, 2022, ECF No. 29, ¶ 9. Four Seasons' transparent mischaracterization of Owner's position is unfortunately consistent with its twisting of the facts throughout its Motion.

4

the matched candidates.  (*Id.*)  If one of those candidates confirmed their availability and willingness to serve, then that candidate would become a member of the panel (subject to the subsequent use of preemptory strikes by either party).  (*Id.*)

### D.     The Breakdown and the Instant Proceeding

The process contemplated by the Protocol quickly became unworkable.  The parties exchanged candidate lists on each of June 7, 2022, June 28, 2022, July 20, 2022, and October 11, 2022.  (*Id.* ¶ 9.)  Despite consideration of sixty-five candidates in total, and despite jointly interviewing many proposed unmatched candidates, the parties failed to reach agreement on the selection of <u>any</u> candidates.  (*Id.* ¶ 10.)  In light of the parties protracted efforts and inability to agree, Owner first suggested that the parties consider an alternative methodology (*id.*, ¶ 11), and after failing to reach agreement to try a new approach, commenced this proceeding on October 31, 2022.  (*Id.* ¶ 12.)

On June 8, 2023, this Court issued its Opinion and Order, invoking its authority under Section 5 of the FAA and directing the parties to "return to the system articulated in the original HMAs, which are not only the parties' first-expressed choice, but also have proven workable and satisfactory in a wide range of circumstances."  (Op. p. 8.)

### E.     Four Seasons Brings This Improper Motion To Delay the Arbitral Process

On June 8, 2023, Four Seasons filed its Motion for Reconsideration of the Opinion and Order.  Four Seasons identifies no new evidence or intervening change of controlling law, and instead alleges that the Court erred in returning the parties to a party-appointment process in accordance with the HMAs (FS Br. pp.16-20); erred in finding that the parties were at an impasse (*id.* pp. 20-22); and erred in finding that any impasse was not manufactured by Owner (*id.* pp. 22-

5

24). All of these arguments were previously raised in Four Seasons' opposition to the Petition, and Four Seasons' request for a "re-do" is a misuse of the Rule 59(e) reconsideration procedure.

## ARGUMENT

"In this Judicial Circuit the standard for granting a Rule 59(e) motion [for reconsideration] is strict, and reconsideration will generally be denied." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (denying motion for reconsideration).[2] A motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Parrish*, 253 F. Supp. 2d at 715 (denying motion for reconsideration where court had previously considered issues raised by the motion).

As a result, such a motion should be granted only when the defendant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013); *see also Wexler v. Allegion (UK) Ltd.*, No. 16 CIV. 2252 (ER), 2021 WL 1226596, at *2 (S.D.N.Y. Mar. 31, 2021) ("A motion for reconsideration or re-argument shall be granted only if the court has overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.").

A motion for reconsideration is not intended as a vehicle "to secure a rehearing on the merits with regard to issues already decided." *Parrish*, 253 F. Supp. 2d at 715. Thus, "[w]here the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to

---

[2] Unless otherwise stated, internal quotations and citations have been omitted throughout.

advance new facts, the motion for reconsideration must be denied." *Wexler*, 2021 WL 1226596, at *2.

### A. Four Seasons Fails To Meet the Standard for Reconsideration

Four Seasons' Motion is a bald attempt to revisit decided issues, and Four Seasons makes no argument (1) that there has been a change in controlling authority or (2) that this Court overlooked any key facts. Instead, Four Season merely disagrees with this Court's reasoning and portrays its disagreement as a manifest injustice. Because Four Seasons identifies no change in the law and no clear error in the Opinion and Order, its Motion must fail.[3] *See Parrish*, 253 F. Supp. 2d at 715; *Wexler*, 2021 WL 1226596, at *2. Indeed, as set forth below, <u>each</u> of the issues that Four Seasons raises was not only addressed by the parties in their original submissions but also was considered and directly addressed in the Opinion and Order.

#### 1. This Court Did Not Err in Returning the Parties to the HMAs

Four Seasons first asserts that this Court committed clear error in returning the parties to the HMAs' party-arbitrator appointment process, given that the parties entered into the Protocol establishing a modified process for arbitrator selection. (FS Br. pp. 16-20.)

This Court already considered and rejected this argument. As Four Seasons itself notes, the Opinion and Order explained that the parties modified the HMAs' arbitrator selection process by entering into the Protocol. (FS Br. p. 16; Op. p. 3.) However, as set forth in the Opinion and Order, "[t]he parties' intentions when signing the EAAs have been frustrated and shown to be impractical, if not impossible, to achieve." (Op. p. 7.) Faced with the reality that the Protocol provided <u>no</u> mechanism to break an impasse, the Court exercised its discretion in line with Second

---

[3] Although Four Seasons' Motion adds a few cases related to reconsideration (*e.g., Corines v. Am. Physicians Ins. Tr.*, 769 F. Supp. 2d 584 (S.D.N.Y. 2011) and *Schoolcraft v. City of New York*, 298 F.R.D. 134 (S.D.N.Y. 2014)) and to arbitral award enforcement (*Avis Rent A Car Sys., Inc. v. Garage Emps. Union, Loc. 272*, 791 F.2d 22 (2d Cir. 1986)), none add anything material to the authority previously submitted.

7

Circuit precedent to direct the appointment of arbitrators in a way that gives effect to the parties' intent, returning the parties to their "first-expressed choice" – their original agreements. (Op. pp. 7-8.)

        a. <u>The Court correctly held that party appointment consistent with the HMAs is the best method of breaking the parties' impasse</u>

At the heart of Four Seasons' Motion rests a fundamental contradiction. Four Seasons purports to rest its Motion on the principle of respect for the parties' intent and repeatedly accuses the Court of deviating from that maxim. But it is Four Seasons that seeks to run roughshod over every prior agreement between the parties. As Owner already explained in its prior filings, each method of arbitrator selection ever agreed to by the parties ensured that Owner had a say in the composition of the panel through either party appointment or a consent requirement. By contrast, Four Seasons never had the right to force the composition of a panel with three former judges or to otherwise dictate the background and qualifications of all three arbitrators. Yet Four Seasons' Motion seeks exactly that extraordinary and consequential power.

The central and undisputed fact is that the parties have only ever agreed to two forms of arbitrator selection. Each of those agreements provided for party input into the arbitrator selection process, without limiting the pool of candidates from which the parties could select when appointing arbitrators. One of those methods – the Protocol – failed, resulting in an unbreakable deadlock. That leaves only one other agreed method: party appointment as provided for in the HMAs. The Court did not err by directing the parties to proceed in that manner, which continues to ensure the input of <u>both</u> Four Seasons and Owner in panel constitution. Four Seasons' disagreement with this Court's analysis is not a basis for reconsideration. *Parrish*, 253 F. Supp. at 715 (A reconsideration motion is not a means "to secure a rehearing on the merits with regard to issues already decided.").

8

> b. Nothing precluded the Court ordering the parties to proceed with party appointment consistent with the HMAs

Four Season also asserts that the Court committed clear error in directing Four Seasons and Owner to follow a party appointment process consistent with the HMAs because they "eschewed" that process by agreeing to the Protocol. (FS Br. pp. 16-20.) But Four Seasons similarly argued that the parties should not be returned to party appointment in its prior submissions, and this Court already rejected those arguments. Four Seasons' Motion offers no reason for a different outcome now. Nothing in Section 5 of the FAA precluded the Court from directing the parties to follow a standard and appropriate method of selection that the parties have operated under for decades and that remains a binding part of the parties' HMAs.[4]

Four Seasons' assertion that this Court's opinion clearly erred in misapplying *Stop & Shop Supermarket Co. v. United Food & Com. Workers Union Loc. 342*, 246 F. App'x 7 (2d Cir. 2007), to justify returning the parties to the HMAs lacks merit. Four Seasons' argument rests on the assumption that the Court lacks the authority to order the parties to utilize a selection method other than what they agreed to in their most recent arbitration agreement. If Four Seasons were correct, courts would only be empowered to direct parties to press ahead and to continue to labor under their agreements, with any deviation being deemed an impermissible failure to give effect to the parties' agreement. Four Seasons' reinterpretation of Section 5 of the FAA is fundamentally inconsistent with the purpose and text of the statute. Section 5 empowers courts (and, in fact, obligates them) to intervene and resolve "mechanical breakdown[s] in the arbitrator selection process." *Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Syndicate 53*, 615

---

[4] Although the parties agreed in the Protocol to a consensus-based selection process for the specific disputes underlying this action, nothing in the Protocol (or any other agreement) otherwise displaced the party-appointment process under the HMAs. Indeed, although not reflected in Four Seasons' description of the facts, the party-appointment provisions of the HMAs remain in effect and continue to govern disputes between the parties.

9

F. App'x 22, 22-23 (2d Cir. 2015). Doing so, by definition, will require that the Court order that appointment be made in a manner that is different from the most recently agreed to method. *See* 9 U.S.C. § 5 (providing that, as an alternative to following the method "in the agreement," a court "shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require").

Lacking relevant case law that supports its position, Four Seasons stretches and misconstrues *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481 (5th Cir. 2012). In that case, the Fifth Circuit affirmed the district court's determination that the parties had reached an impasse and that the court had authority under Section 5 to intervene. *Id.* at 491-94. But, in breaking the deadlock, the district court "substituted its own notion of fairness" and contravened "the parties' clear agreement" to have a panel of three arbitrators by increasing the number to five. *Id.* at 495-96. The Fifth Circuit reversed only that determination. In short, the portions of *BP* on which Four Seasons relies did not implicate the ***method*** of selection, which is the issue now before this Court, but rather the ***number*** of arbitrators appointed.

This is a distinction with a difference for two critical reasons. *First,* the number of arbitrators was not itself the cause of any deadlock in *BP*. *Id.* at 496 (noting that the district court could have broken the deadlock by appointing three arbitrators itself). Rather, the deadlock was due to problems with the method of selection. *BP* thus stands for no more than the unremarkable proposition that a court cannot rewrite aspects of an arbitration agreement that have no bearing on the deadlock it is resolving. This Court did nothing of the sort in its Opinion and Order. *Second,* Section 5 contains a separate and more limiting clause that addresses the number of arbitrators. 9 U.S.C. § 5 ("unless otherwise provided in the agreement the arbitration shall be by a single arbitrator"). As the Fifth Circuit held, that provision imposes a unique, additional constraint that

10

deprives a court of discretion to change the size of a panel. *BP Expl. Libya*, 689 F.3d. at 495-96. That provision is not implicated in this case.[5]

In erroneously relying on *BP*'s analysis concerning the number of arbitrators, Four Seasons entirely overlooks the Fifth Circuit's treatment of the method of selecting arbitrators. In addressing the appropriate action on remand, the Fifth Circuit itself proposed a method that differed from the parties' most recent agreement. *Id.* at 497. Further, the Fifth Circuit expressly noted that the district court retained the "discretion . . . to modify, revise, supplement, or replace this suggested method of selecting the arbitrators or otherwise come to a resolution, so long as it is not inconsistent with this opinion." *Id.* In short, the Fifth Circuit reaffirmed that, in giving effect to the parties' intent, courts are not obligated to force parties to pursue doomed processes but rather are free to fashion appropriate remedies.[6] *See also id.* at 495 (noting that the district court could have appointed all three arbitrators with or without party input, even though such a process was not provided for in their agreement).

This Court properly determined that breaking the parties' impasse by returning them to a party-appointment process consistent with the HMAs best effectuated their intent. (Op. p. 8.) As the Court explained, that process was "the parties' first-expressed choice" and has "proven workable and satisfactory in a wide range of circumstances." (*Id.*) The Court did not exceed its authority, as Four Seasons claims, in making that determination, and Four Seasons offers no proper basis for reconsidering the Court's judgment.

---

[5] Although Four Seasons also cites *Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105 (10th Cir. 2009), that case has no bearing here as the issue before the court was which of two properly constituted panels should decide a *res judicata* issue, not the proper method for appointing arbitrators to break a deadlock.

[6] Numerous other courts have concluded similarly that Section 5 empowers a court to exercise its discretion to give effect to the parties' intent. *See GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*, No. 1:11-cv-00907 (AWI), 2011 WL 6780927, at *10 (E.D. Cal. Dec. 27, 2011), *report and recommendation adopted*, 2012 WL 174952 (E.D. Cal. Jan 20, 2012); *Creative Tile Mktg. Inc. v. SICIS Int'l S.r.L*, 922 F. Supp. 1534, 1540 (S.D. Fla. 1996) (directing parties to each select party-appointed arbitrators).

11

## 2. This Court Did Not Err in Finding an Impasse

Four Seasons next argues that this Court committed clear error in finding that an impasse existed at all. The Court already considered and rejected the argument that the parties were not at an impasse. In the Opinion and Order, this Court held that there is "no indication that the parties will come to a consensus," that the process under the Protocol "has proven to be unworkable," and that "it is time to abandon the concepts expressed in the EAAs." (Op. pp. 6, 7.) Thus, despite Four Seasons' protestations, the parties are at an impasse.

Four Seasons criticizes the Court's ruling by asserting that the parties spent only "a single month" working under the Protocol, offering a creative retelling in which the parties mutually suspended efforts due to scheduling issues during "the summer months." (FS Br. p. 20.) But that is not what happened. As the uncontroverted facts establish, the parties worked for roughly five months, considered sixty-five candidates, jointly interviewed numerous candidates, and yet never agreed to any candidates as mutually acceptable. There is no new evidence and there is no basis in fact, logic, or the parties' agreement supporting Four Seasons' attempt to diminish the parties' efforts.

Four Seasons also faults the Court for resting its determination of an impasse solely on the passage of time. (FS. Br. pp. 2, 20.) But that is a mischaracterization of the Court's actual ruling. In the Opinion and Order, the Court considered the operation of the selection method under the Protocol, the parties' extensive and failed efforts to constitute a panel, and the unreconcilable philosophical disagreement that in part prevented the parties from appointing even one arbitrator. (Op. pp. 3-4, 5-6.) In light of all of those factors, the Court determined there was "no indication that the parties will come to consensus." (*Id.* p. 6.) Four Seasons, yet again, fails to explain what would or could change that would cause the parties to suddenly reach agreement now.

Ultimately, Four Seasons' offers nothing new to show that the parties were not at an impasse. Four Seasons rehashes the same theories and arguments that the Court previously rejected and fails to identify any change in the law, new facts, or overlooked controlling authority. Four Seasons' mere insistence that the Court should have ruled as Four Seasons wanted does not constitute a proper basis for reconsideration.

### 3. Owner Did Not Manufacture an Impasse

Four Seasons last argues that this Court committed clear error by failing to find that Owner caused any impasse between the parties. As with Four Seasons' other arguments, this Court already considered this issue and held that Owner had not "attempt[ed] to unilaterally manufacture a deadlock to avoid complying with the contract to which it agreed." (*Id.* p. 5.) This Court unambiguously found that the deadlock was due to the parties' legitimate disagreement about the proper composition of the panel and had "not been orchestrated by a party." (*Id.*)

Four Seasons acknowledges in its Motion that "the Court correctly found that the question of 'fault' is irrelevant under Section 5." (FS Br. p. 3.) But then, in what by its own admission is a useless exercise, Four Seasons proceeds to blame Owner for the breakdown in the selection process. (*Id.* pp. 22-23.) Four Seasons contends that Owner is at "fault" because (for some unstated reason) Four Seasons was entitled to insist on a panel composed exclusively of former judges but paradoxically Owner was contractually precluded from seeking the appointment of even one industry arbitrator. Four Seasons' argument is facially absurd and directly contrary to the parties' agreement. The Protocol gave each party an equal say in the selection process by requiring mutual consent for the appointment of each arbitrator. The Protocol did not provide any mechanism for elevating Four Seasons' preferences or conceptions of appropriate arbitrators above those of Owner. Instead, the Protocol left Four Seasons and Owner on equal footing, and did not

13

preclude Owner from seeking an industry arbitrator.[7]  There was nothing improper about Owner's unwillingness to fold to Four Seasons' unilateral effort to dictate the backgrounds and qualifications of every arbitrator on the panel.

Four Seasons dedicates multiple pages in its Motion to setting forth a self-serving history of the arbitrator selection process.  But Four Seasons' arguments rest entirely on the flawed premise that it was improper for Owner to seek appointment of an industry arbitrator.  Once that premise is rejected, Four Seasons' version of events becomes irrelevant.  In any event, as explained in Owner's prior filings, it was Four Seasons – not Owner – that took a hardline position by refusing to agree to the appointment of even one arbitrator with industry experience.  As the Court found: "[w]hile Owners have made their preference for an industry arbitrator known, their penchant for an insider cannot be said to have driven the appointment process to a halt.  Owners proposed a number of non-industry arbitrators, including former judges, in addition to industry professionals." (Op. p. 5.)  Four Seasons provides no factual basis to refute those findings.

Four Seasons' effort to blame Owner for the parties' impasse is nothing new.  Four Seasons made these very same arguments in its original briefing, and this Court already considered and rejected them.  Ultimately, Four Seasons' attempt to use a motion for reconsideration under Rule 59(e) as a vehicle to revive "the same arguments [it] offered on the original motion" and advocate for a position already rejected by the Court is precisely the type of motion for reconsideration that is expressly disfavored in this circuit, and which "must be denied." *Wexler*, 2021 WL 1226596, at *2.

---

[7] Ironically, while decrying Owner's desire to have an arbitrator with industry experience, Four Seasons claims its efforts to unilaterally impose a ban on such persons acting as arbitrators is justified because, definitionally, no person with industry experience could be "neutral, impartial and independent." (FS Br. pp. 9, 23).  Four Seasons' absurd position underscores the fundamental differences between the parties, the existence of an impasse, and the need for judicial intervention in this action.

**B.     There Is No Manifest Injustice in Breaking the Parties' Deadlock**

Four Seasons repeatedly protests that the Opinion and Order is manifestly unjust because it forces Four Seasons to expend money and time engaging in "the hollow formality of arbitrating a dispute before an improperly constituted panel." (FS Br. pp. 3, 15.)  But Four Seasons' reasoning presupposes that the Opinion and Order is erroneous and will give rise to a later challenge about the constitution of the arbitral panel.  It adds nothing at all to the consideration of that issue on the merits.  As explained above, Four Seasons has utterly failed to (and cannot) show any error in the Court's Opinion and Order.  Thus, the fact that Four Seasons did not get its way does not constitute a manifest injustice, and its assertions of hypothetical harm are misplaced.

## CONCLUSION

For the foregoing reasons, Four Seasons falls well short of meeting the strict standard required for reconsideration and Owner respectfully requests that the Court deny Four Seasons' Motion.

*     *     *

Dated: July 12, 2023
     New York, New York

Respectfully submitted,

   */s/ Todd E. Soloway*
Todd E. Soloway
Bryan T. Mohler
PRYOR CASHMAN LLP
7 Times Square, 40th Floor
New York, NY 10036
Phone: (212) 421-4100
Fax: (212) 326-0806
Email: tsoloway@pryorcashman.com
     bmohler@pryorcashman.com

Gregory J. Scandaglia
Joseph R. Swee
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
Phone: (312) 580-2020
Fax: (312) 782-3806
Email: gscandaglia@scandagliaryan.com
     jswee@scandagliaryan.com

*Counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC*