UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Hotel 57 L.L.C. and 1260 BB Property, LLC,

Plaintiffs,

-against-

FSR International Hotels Inc. and Four Seasons
Hotels Limited,

Defendants.

Case No. 22-cv-09331

Hon. Louis L. Stanton

## DECLARATION OF GREGORY J. SCANDAGLIA IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

Pursuant to 28 U.S.C. § 1746, GREGORY J. SCANDAGLIA declares:

1.    I am a founder and partner at the law firm Scandaglia Ryan LLP, counsel for Petitioners Hotel 57 L.L.C. and 1260 BB Property, LLC (collectively, "Owner") in this action.  I respectfully submit this declaration in opposition to Defendants FSR International Hotels Inc. and Four Seasons Hotels Limited's (collectively, "Four Seasons") Motion for Reconsideration ("Motion") of the Court's Opinion and Order dated June 8, 2023 (the "Opinion and Order").

**The Parties' Relationship and the Underlying Dispute**

2.    More than two decades ago, Owner acquired two luxury hotel properties, Four Seasons Hotel New York ("FSNY") and Four Seasons Resort The Biltmore Santa Barbara ("FSSB").  Four Seasons was engaged to manage FSNY and FSSB pursuant to separate hotel management agreements ("HMAs").  The HMAs governed the management of the FSNY and FSSB and set forth obligations that Four Seasons owed to Owner, including duties to maximize profits and minimize costs while operating the properties consistent with the standard of world class luxury hotels.

3.      The dispute underlying this action relates to Four Seasons' extensive mismanagement of FSNY and FSSB in violation of its contractual and fiduciary duties to the direct and substantial financial detriment of Owner, as detailed in default notices served on Four Seasons in February 2021.

4.      On March 24, 2021, after Four Seasons failed to cure the noticed defaults, Owner served notice on Four Seasons terminating the HMAs.  In response to the termination notices, Four Seasons refused to vacate the properties and contested Owner's termination of the HMAs.  An arbitration before the American Arbitration Association ("AAA"), which is currently pending, was initiated on March 29, 2022.

**The Parties' Arbitration Agreements**

5.      Each HMA contains an arbitration provision.   Recognizing that, absent modification, the HMAs would require the parties to conduct two arbitration proceedings, in July 2021 the parties entered into a letter agreement (the "Letter Agreement") providing for a "single, consolidated arbitration . . . in New York, New York before a panel of three neutral, impartial and independent arbitrators."

**The Arbitrator Selection Process**

6.      The HMAs provide that arbitrable disputes among the parties shall be resolved by a panel of three arbitrators.  The HMAs incorporate a well-established and common selection process for complex commercial disputes.  Each party is to appoint one arbitrator.  Then, within ten days of their appointment, the two party-appointed arbitrators are to nominate a third independent arbitrator.  In the event the party-appointed arbitrators are unable to agree upon the third panel member, then the AAA is to complete the panel by making the final appointment.

7.      After the underlying arbitration was initiated, Owner and Four Seasons entered into a Stipulated Arbitration Protocol dated May 17, 2022 (the "Protocol"), which set forth certain agreements on the scope of discovery and included a new, consensus-based process for selecting arbitrators.

8.      Under the Protocol, each party was to simultaneously submit the names of eight potential arbitrators to the AAA.  In the event that a candidate appeared on both lists (a "joint candidate"), the AAA would obtain certain disclosures from the candidate.  The AAA then was to provide those disclosures to the parties along with the names of all other candidates identified on the lists (*i.e.*, those who were identified by only one party as potential arbitrators).  After that, each party had an opportunity to identify any unmatched candidate from the other's list that it found acceptable (a "matched candidate").  The parties then would jointly telephonically contact the joint candidates and the matched candidates.  If one of those candidates confirmed their availability and willingness to serve, then that candidate became a member of the panel (subject to the subsequent use of preemptory strikes by either party).

**The Breakdown of the Selection Process**

9.      On each of June 7, June 28, July 20, and October 11, 2022, each party submitted lists of eight candidates to the AAA.  Throughout this period the parties conducted multiple substantive interviews of proposed candidates.

10.      Despite consideration of sixty-five candidates overall, the parties were unable to reach agreement on the selection of any candidates in part due to fundamental disagreements regarding the composition of the arbitral panel.

11.      Given the parties' protracted efforts and inability to agree, Owner proposed alternative solutions.  For example, I proposed using a rank-and-strike method, which is common

in complex commercial disputes and is the default selection method under the AAA's Commercial Arbitration Rules. Four Seasons' counsel, at one point, agreed to create a written rank-and-strike protocol for consideration. But none was ever provided. I also proposed reverting to the party arbitrator-based selection process set forth in the FSNY HMA and the FSSB HMA.

12.     Four Seasons did not accept these proposals, and the parties remained at an impasse, despite five months of effort. As a result, on October 31, 2022, Owner commenced this proceeding requesting that the Court resolve the parties' deadlock and issue an order directing the appointment of arbitrators.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 12, 2023
Chicago, Illinois

GREGORY J. SCANDAGLIA, ESQ.

4